**Amin A. RASHID**

v.

**PUBLIC SAVINGS ASSOCIATION, INC., et al.**

**Civ. A. No. 87–7249.**

United States District Court, E.D. Pennsylvania.

March 6, 1989.

Amin A. Rashid, Amin A. Rashid & Associates, Philadelphia, Pa., for plaintiff.

Richard F. Stern, Jenkintown, Pa., for Public Savings Ass'n, Inc., Apex Financial Corp. of Pa., Inc.

Jeffrey B. Albert, Philadelphia, Pa., for Second Church of Christ, Scientist, Inc. Fox, Rothschild, O'Brien & Frankel.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

This action arises from alleged civil rights violations which plaintiff claims were perpetrated upon him by defendants Public Savings Association, Inc. (Public Savings), Apex Financial Corporation of Pennsylvania, Inc. (Apex), Richard Stern (Stern) and Fox Rothchild, O'Brien & Frankel (Fox, Rothchild).[1] Before the court are the motions of the defendants Public Savings, Apex, Stern, and Fox, Rothchild for summary judgment.[2] For the reasons set forth below, I will grant the defendants' motions and enter summary judgment in their favor.

I

*Factual Background*

The relevant facts are as follows: Plaintiff Amin A. Rashid owned a piece of real property located at 3015 West School House Lane, Philadelphia, Pennsylvania. On or about December 9, 1983, plaintiff executed a Note secured by a Mortgage on his property from Zeta Beta Tau in the amount of $50,000. On or about January 31, 1985, plaintiff executed a second Note secured by a Mortgage from Colonial Financial Services, Inc. in the amount of $55,000. This mortgage was then assigned to defendant Apex and later reassigned to defendant Public Savings. Apex remained as Public Savings' servicing agent on the loan. As a result of plaintiff's failure, beginning in May 1985, to meet his monthly installment obligations on the mortgage,[3] on August 20, 1985 Public Savings instituted mortgage foreclosure proceedings against the plaintiff. Plaintiff, *pro se*, filed an answer and new matter in response to Public Savings' action. At the close of the pleadings, Public Savings filed a motion

---

**1.** Plaintiff initially brought suit against the holders of the first mortgage of his property, Zeta Beta Tau Fraternity of Philadelphia Textile, Inc., the holder of the second mortgage, initially held by Apex Financial Corporation of Pennsylvania, Inc. and later reassigned to Public Savings Association, Inc., the assignee of the second mortgagee's interest following a sheriff's sale, Second Church of Christ Scientist, Inc., and its attorneys, Fox, Rothchild, O'Brien & Frankel. By order dated February 22, 1988, Judge Green dismissed plaintiff's complaint against Second Church of Christ Scientist, Inc. and by order dated May 6, 1988, Judge Green dismissed plaintiff's complaint against Zeta Beta Tau Fraternity. Pending before this court is plaintiff's motion for relief from the judgment dismissing the complaint against Second Church of Christ Scientist, Inc.

**2.** Judge Green, by order dated February 22, 1988, denied defendants' motion to dismiss and, pursuant to Fed.R.Civ.P. 12(b), converted it to a motion for summary judgment.

**3.** Judge Bruce Fox, United States Bankruptcy Judge for the Eastern District of Pennsylvania, found that no mortgage payments were made from May 1985 through May 1986, the time when Mr. Rashid filed for bankruptcy. Additionally, plaintiff failed to make any payments since he filed for bankruptcy. *See In re Rashid,* No. 86–02165G slip op. at 2 n. 1 (E.D.Pa. October 30, 1986) (exhibit "F" attached to the Memorandum of Law in Support of the Motion to Dismiss and in the Alternative, Motion for Summary Judgment of Defendants Public Savings Association, Inc., Apex Financial Corporation of Pa., Inc. and Richard Stern).

for summary judgment. Plaintiff failed to respond to Public Savings' motion, and by order dated March 18, 1986, Judge DiBona of the Court of Common Pleas of Philadelphia County granted the motion for summary judgment and entered judgment in favor of Public Savings and against plaintiff in the amount of $59,365.01 plus interest. On March 26, 1986, damages were assessed in the amount of $64,435.69, and Public Savings obtained a writ of execution with plaintiff's property scheduled for a sheriff's sale on May 5, 1986.

On May 1, 1986, plaintiff filed for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania, and the sheriff's sale was stayed pending those proceedings. Public Savings filed a motion in the bankruptcy court for relief from the automatic stay to which plaintiff then responded, and a hearing was scheduled for June 12, 1986. Upon representations by the plaintiff that he would be unable to attend the hearing, Judge Goldhaber continued the hearing until June 30, 1986. The hearing was held, but plaintiff failed to attend and Judge Goldhaber granted Public Savings' motion for relief. On July 7, 1986, plaintiff filed a notice of appeal with Judge Goldhaber. He also filed a request with Judge Goldhaber to reconsider, or alternatively, to stay the proceedings. No bond to support a stay was filed by plaintiff, and Public Savings relisted plaintiff's property for a sheriff's sale for October 6, 1986. By order dated October 2, 1986, Judge O'Neill of this court granted plaintiff's requested stay and remanded the case to the bankruptcy court for a hearing. Judge Fox scheduled a hearing pursuant to Judge O'Neill's order, for October 30, 1986.[4] At the hearing held on October 30, 1986, Judge Fox found that plaintiff had no equity in the property because the balance of the two mortgages liened thereon exceeded the fair market value of the property, that plaintiff failed to make any mortgage payments from May 1985 through October 1986 and that the property had been vacant, subject to vandalism and in a dilapidated condition.[5] As a result of these findings, Judge Fox granted Public Saving's motion for relief and permitted it to sell plaintiff's property at a sheriff's sale scheduled for November 3, 1986. The premises was sold on November 3, 1986 and Public Savings assigned its bid to Second Church on November 13, 1986.

## II

### Discussion

Under the Federal Rules of Civil Procedure, summary judgment may be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The evidence presented must be considered in a light most favorable to the non-moving party and that party must receive the benefit of all reasonable inferences arising from that evidence. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

### Section 1985(3)

Plaintiff brings this action under 42 U.S. C. § 1985(3), alleging that the defendants conspired to engage in conduct designed to deprive him of "the equal protection of the laws or equal privileges and immunities

---

4. Initially, a hearing was scheduled for October 27, 1986, but only plaintiff, who did not appear, received notice. The hearing was then rescheduled for October 30th. *Id.* at 2 n. 1.

5. *Id.* at 4.

under the laws." Section 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1982).

In *United Brotherhood of Carpenters & Joiners of America, Local 610 AFL–CIO v. Scott*, 463 U.S. 825, 830, 103 S.Ct. 3352, 3357, 77 L.Ed.2d 1049 (1983), the Supreme Court addressed the issue of whether section 1985(3) contains a requirement of state involvement and found that in the context of a 1985(3) claim alleging a conspiracy to deprive a person of his First and Fourteenth Amendment rights, "it would be untenable to contend that either of those provisions could be violated by a conspiracy that did not somehow involve or affect a state." *Id.* at 831, 103 S.Ct. at 3357–58. Although *Scott* involved a First Amendment violation, the Court made clear, and subsequent lower court decisions have found, that if the substantive right underlying the 1985(3) claim is one which requires either state action or state involve-

ment, such state involvement must be alleged, and evidence of this official conduct must be presented. *See Morris v. The Penn Mutual Life Ins. Co.*, No. 87–7062, slip op. at 12–13, 1989 WL 14063 (E.D.Pa. February 21, 1989) (LEXIS, Genfed library, Dist file); *Bowman v. Bank of Delaware*, 666 F.Supp. 63, 65 (D.Del.1987); *Stoltzfus v. Ulrich*, 587 F.Supp. 1226, 1230–31 (E.D. Pa.1984). In the case *sub judice*, plaintiff's equal protection allegations are premised on the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment, however, only protects individuals against *state* action and not against wrongs by *individuals*. *Scott*, 463 U.S. at 831–32, 103 S.Ct. at 3357–58. As a result, plaintiff must prove, either that defendants were "state actors" or that defendants sought to influence the state to act in a prohibited way. *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir.1988), *cert. denied*, ___ U.S. ___, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). After a comprehensive review of the record, I find no evidence of any state involvement in the alleged conspiracy. All parties to this action are clearly private actors. Moreover, plaintiff has offered absolutely no evidence which remotely suggests that defendants were in any way related to or acting on behalf of, the state. Because plaintiff has failed to produce any evidence from which a fact-finder could reasonably conclude that there was any state involvement, defendants are entitled to judgment as a matter of law. Accordingly, I will grant summary judgment in favor of the defendants on plaintiff's 1985(3) claim.[6]

---

**6.** I note that even if I found the existence of state involvement, I would still grant summary judgment in favor of the defendants. The core of plaintiff's 1985(3) claim is that the defendants conspired to deprive him of his interest in his property by obtaining a judgment through mortgage foreclosure proceedings of which he was not given notice. Under section 1985(3), "plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any

right or privilege of a citizen of the United States." *de Botton v. Marple Township*, 689 F.Supp. 477, 482 (E.D.Pa.1988) (citing *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56 (1983). *See also Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). After a careful review of the record, I find that there is no evidence that defendants conspired to confiscate plaintiff's property and deny him equal protection of the laws. On the contrary, I find an abundance of evidence that plaintiff, as a debtor in a mortgage foreclosure and bankruptcy proceeding was treated, both by the defen-

### Notice of the Section 362
### Automatic Stay

■ I turn now to plaintiff's claim that he was not notified of hearings held on June 30, 1986 and October 30, 1986 to lift the automatic stay of the sheriff's sale. On May 1, 1986, faced with the imminent sheriff's sale of his property, plaintiff filed a petition for relief pursuant to chapter 13 of the bankruptcy code. When a debtor files for bankruptcy, all enforcement proceedings which have been commenced against him are automatically stayed. 11 U.S.C. § 362 (1982 & Supp. IV 1986). However, pursuant to 11 U.S.C. § 362(d), creditors have a right to request that the court grant relief from the automatic stay provisions and provide it with a hearing to determine if the automatic stay should be lifted.[7]

Plaintiff asserts that defendants conspired to deprive him of the equal protection of the laws by failing to provide him with adequate notice of these hearings. In order to properly evaluate plaintiff's claim, I will briefly review the facts, gleaned from the record, which relate to these hearings.

Plaintiff's filing for relief under Chapter 13 of the Bankruptcy Code stayed the scheduled sale of plaintiff's property through a sheriff's sale which was to be held on May 5, 1986. On or about May 15, 1986, Public Savings filed a motion for relief from the automatic stay in accordance with section 362(d) of the Bankruptcy Code. Plaintiff then responded to Public Savings' motion by filing a "motion to dismiss requested relief from stay." Judge Goldhaber scheduled a hearing for June 12, 1986 on Public Saving's motion and plaintiff's opposition thereto. The record is clear and unambiguous that plaintiff received timely notice of the June 12th hearing.[8] Mr. Rashid responded to the notice of the hearing by advising Judge Goldhaber that "due to circumstances beyond [his] control," he could not appear on the 12th and requested that the hearing be rescheduled.[9] Judge Goldhaber, apparently in an effort to accommodate plaintiff, rescheduled the hearing for June 30, 1986. The record is clear and unambiguous that plaintiff received timely notice of the June 30th hearing.[10] Never-

dants and the courts, as any debtor would have been treated under similar circumstances.

Additionally, a basic, well-established requirement of a section 1985(3) claim is that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Because I find that even when the record is construed in the most favorable light possible to the plaintiff, the record is completely devoid of any evidence which indicates any discriminatory animus or any actions of any kind which could possibly be construed as an attempt to discriminate against the plaintiff on the basis of his race, and because there is no evidence to indicate that the foreclosure proceedings were instituted for any reason other than the fact that plaintiff failed, beginning in May 1985, to meet his required monthly mortgage payments, I would, even if I found state involvement to exist, grant summary judgment in favor of the defendants on plaintiff's 1985(3) claim.

7. 11 U.S.C. § 362(d) provides, in pertinent part:
   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property ... if—
   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization.

8. *See* exhibit "J" attached to the Memorandum of Law in Support of the Motion to Dismiss and in the Alternative, Motion for Summary Judgment of Defendants Public Savings Association, Inc., Apex Financial Corporation of Pa., Inc. and Richard Stern.

9. *See id.* at exhibit "L."

10. Plaintiff sent Mr. Stern, Public Savings' attorney, a letter, dated June 28, 1986, stating that he was once again unable to attend and requested that the hearing be delayed until mid-July. Mr. Stern asserts that he did not actually receive the letter until after the June 30th hearing. Although there may be a dispute as to whether Mr. Stern actually received this letter before the date of the hearing, plaintiff's letter dated June 28, 1986 itself provides evidence that plaintiff was in fact given adequate notice of the hearing. It is therefore clear that despite the date that defendant and the court received the letter, Mr. Rashid must have received adequate notice that the hearing was to be held on June 30th. It simply defies logic to accept plaintiff's assertion that he was not given notice of the hearing until

theless, despite adequate notice, plaintiff failed to appear at this hearing. Public Savings appeared before Judge Goldhaber on June 30th and the court granted its motion for relief. The next relevant date occurred after Judge O'Neill remanded the case to the bankruptcy court for a hearing. Initially, the hearing was scheduled for October 27, 1986. Although the plaintiff received notice of this hearing, he nevertheless failed to appear. Because Public Savings did not receive notice of the October 27th hearing, Judge Fox rescheduled the hearing for October 30, 1986. The record is clear and unambiguous that the plaintiff received adequate notice of this hearing.[11] Plaintiff, however, despite the fact that he received notice of the hearing, failed to appear and Judge Fox entered an order granting Public Savings relief from the automatic stay. Plaintiff's property was subsequently sold at a sheriff's sale which took place on November 3, 1986.

It is uncontroverted from the record before me that plaintiff received adequate notice of each and every court proceeding. There is a significant amount of evidence in the record which indicates that plaintiff was aware of both the dates and times of each of the proceedings. Likewise, it appears clear from plaintiff's responses to his creditor's motions and various correspondence written by him, that in fact he had been given ample notice at every stage of these proceedings. On the other hand, oth-

er than general conclusory statements that he was deprived of adequate notice of the various hearings to foreclose on his property, plaintiff has not come forward with any evidence to indicate that proper notice was denied to him.[12] Therefore, I conclude from the record before me that plaintiff, having received adequate notice of the hearings to be held to decide whether Public Savings was to be granted relief from the automatic stay and having been given an opportunity to be heard at such hearing,[13] was not deprived of the benefits of the procedural provisions of section 362(d).

Accordingly, for the reasons set forth above, I will grant summary judgment in favor of the defendants on plaintiff's claim that he was not provided with adequate notice of the hearings required under 11 U.S.C. § 362(d).

Finally, I have before me plaintiff's motion for relief from Judge Green's order dismissing his complaint against Second Church of Christ Scientist, Inc. For the reasons set forth in Judge Green's order dated February 22, 1988, plaintiff's motion will be denied.

after the June 30th hearing, when he actually wrote Mr. Stern a letter dated June 28th informing Mr. Stern that he could not attend the hearing to be held on the 30th.

I note that the June 28th letter did not state that plaintiff had to tend to an emergency, nor did it state that plaintiff could not attend the hearing due to illness or any other threat to his health. The letter merely contained a general statement that plaintiff would be "out of town." It was quite presumptuous of plaintiff to assume that the court would simply reschedule this hearing as many times as was necessary to accommodate his personal schedule. Apparently, plaintiff erroneously believes that a court is under an obligation to accommodate every conflict in his calendar and continue to reschedule any proceeding which could not easily be worked into his busy schedule. This is quite simply not the case.

11. *See* exhibits "D" and "E" attached to the Memorandum of Law in Support of the Motion to Dismiss and in the Alternative, Motion for Summary Judgment of Defendants Public Savings Association, Inc., Apex Financial Corporation of Pa., Inc. and Richard Stern. *See also In re Rashid,* No. 86–02165G, slip op. at 2 n. 1 (E.D.Pa. October 30, 1986) (*id.* at exhibit "F").

12. It is clear that "a party resisting [a Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

13. I note that if in fact plaintiff's interests were not properly represented in the foreclosure proceedings, it was because, after being given adequate notice, *plaintiff himself* failed to act responsibly and exercise his opportunity to be heard.