**Jane ROE, et al.**

v.

**OPERATION RESCUE, et al.**

Civ. A. No. 88–5157.

United States District Court,
E.D. Pennsylvania.

March 21, 1989.

delphia area. After a hearing in open court on June 30, 1988, this court granted plaintiffs' motion for a temporary restraining order (TRO). On September 22, 1988, the court granted plaintiffs' motion for a preliminary injunction pursuant to a temporary consent decree agreed to by the parties. After another hearing on November 15–16, 1988, and pursuant to an agreement between the parties, the court issued an order that provided for the preliminary injunction to remain in effect until such time as a hearing on permanent injunctive relief was held. After the November hearing and in a Memorandum and Order dated December 5, 1988 [hereinafter Mem.Op.], defendants Randall Terry, Michael McMonagle, Joseph Foreman, Operation Rescue, and nondefendant Tina Krail were found in civil contempt for violating the temporary restraining order of June 30, 1988.

Linda J. Wharton and Lori Lowenthal Stern, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiffs.

William A. Bonner, The Rutherford Institute of Pa., Media, Pa., for Operation Rescue and Randall Terry.

Joseph F. Wusinich, III, Wusinich and Brogan, West Chester, Pa., for Michael McMonagle, Operation Rescue, Randall Terry and Joseph Foreman.

Patricia Walton in pro per.

## MEMORANDUM

NEWCOMER, District Judge.

This is an action for declaratory and injunctive relief sought against various anti-abortion activists. Presently before the court are the parties' motions for summary judgment.

## I. BACKGROUND

Plaintiffs filed this action on June 29, 1988, seeking declaratory and injunctive relief addressed to the health and safety of women seeking abortions or other family planning services in the metropolitan Phila-

## II. SUMMARY JUDGMENT STANDARD

A trial court may enter summary judgment if, after a review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988). The evidence presented must be viewed in the light most favorable to the nonmoving party. *White*, 862 F.2d at 59. Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

The moving party has the initial burden of identifying evidence which it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's

case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, when the nonmoving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir. 1987) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White,* 862 F.2d at 59 (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553).

### III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs seek summary judgment on their claim under 42 U.S.C. § 1985(3) and common law claims of trespass, intentional interference with business relations, false imprisonment, and intentional infliction of emotional distress.[1] Plaintiffs request the entry of summary judgment against defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue only, and the relief sought is limited to declaratory relief and attorneys fees.[2]

### A. Claim under 42 U.S.C. § 1985(3)

■ Section 1985(3) provides a remedy for persons injured by conspiracies to deprive them of their rights to equal protection under the laws. *de Botton v. Marple*

*Township,* 689 F.Supp. 477, 482 (E.D.Pa. 1988). A cause of action under 1985(3) has four essential elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters and Joiners of America, Local 610 (Carpenters) v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *de Botton,* 689 F.Supp. at 482.

Plaintiffs claim that some of the women seeking abortions in the metropolitan Philadelphia area reside in states other than Pennsylvania, and that defendants conspired together to obstruct these women in the exercise of their constitutional right to travel. They also claim that the purpose of defendants' conspiracy is to interfere with the exercise of the "constitutional right to abortion." I will now examine each of the elements of plaintiffs' § 1985(3) claims.

#### 1. *The Conspiracy*

■ At the outset, defendants do not deny or dispute plaintiffs' allegation that the defendants constitute a conspiracy. *See* Defendants' Answer to Plaintiffs' Motion for Summary Judgment [Defendants' Answer] at 11 ("The *conspiracy of defendants* was motivated by an economic or commercial animus....") (emphasis added). When the alleged conspiracy is aimed at a right protected only against state interference, the plaintiff must prove that the conspiracy included state involvement of some sort. *Carpenters,* 463 U.S. at 831–34, 103 S.Ct. at 3357–59; *Rashid v. Public Sav.*

---

1. Plaintiffs' complaint includes a count under RICO, 18 U.S.C. § 1961 *et seq.* Due to the pendency of an appeal before the Third Circuit in a similar anti-abortion protest case at the time the summary judgment motions were due, plaintiffs did not seek summary judgment on the RICO. Defendants, on the other hand, seek summary judgment on the RICO claim. Because the parties did not have the benefit of considering the Third Circuit's decision in *Northeast Women's Center v. McMonagle,* 868 F.2d 1342 (3d Cir.

1989) (upholding the application of civil RICO to the activities of anti-abortion protesters), the court will not address the RICO claim at this time.

2. References in this memorandum to "defendants" will include defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue only.

*Ass'n,* 97 B.R. 187 (E.D.Pa.1989); *New York State Nat'l Org. of Women v. Terry,* 704 F.Supp. 1247 (S.D.N.Y.1989). In this case, plaintiffs claim that defendants' conspiracy is aimed at two of plaintiffs' constitutional rights: the right to travel; and the "constitutional right to abortion." These rights will be discussed more fully below.

### 2. *Motivation of the Conspiracy*

■ A conspiracy is within the scope of § 1985(3) only if it is motivated by some class-based, invidiously discriminatory intent. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Although the Supreme Court in *Griffin* left open the question of whether conspiracies motivated by something other than racial bias would be actionable under § 1985(3), the Third Circuit answered this question in the affirmative in *Novotny v. Great American Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1243–44 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). In *Novotny,* the Third Circuit held that sex discrimination falls within the categories of animus condemned by § 1985(3).

■ Subsequent cases in the Third Circuit demonstrate the continuing vitality of *Novotny* and the applicability of § 1985(3) to gender-based animus. *See C & K Coal Co. v. United Mine Workers of America,* 704 F.2d 690, 700 (3d Cir.1983) (citing *Novotny* as valid law); *Dudosh v. City of Allentown,* 629 F.Supp. 849, 853 (E.D.Pa. 1985) (class of abused women denied adequate protection came within the scope of § 1985(3)); *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1217–19 (D.N.J.1984) (class of female employees sexually or otherwise harassed by supervisor came within scope of § 1985(3)). Based on the foregoing, the court finds that "women seeking abortions" are a class entitled to protection under § 1985(3), and that a conspiracy to deprive women seeking abortions of their constitutional rights is actionable under § 1985(3).[3] *Accord New York State Nat'l Org. of Women v. Terry,* 704 F.Supp. at 1258–59 (S.D.N.Y.1989); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165 (D.Ore.1988).

I turn now to examine the rights that plaintiffs claim defendants have interfered with.

#### a. *Right to Travel*

■ As the Supreme Court has stated, "Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 901, 106 S.Ct. 2317, 2320, 90 L.Ed.2d 899 (1986). The constitutional right to travel includes the right to travel interstate to obtain an abortion. *Doe v. Bolton,* 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973). Since this right is protected from purely private as well as governmental interference, state action or involvement need not be shown. *Carpenters,* 463 U.S. at 832–33, 103 S.Ct. at 3358–59; *Griffin,* 403 U.S. at 105–06, 91 S.Ct. at 1799–1800.

Plaintiffs claim that defendants' physical blockades obstruct access to abortion clinics for women seeking abortions. They claim that the plaintiff clinics serve women who travel from out-of-state and that the blockades discourage such women from traveling to Pennsylvania, force them to make several trips or detours to obtain medical services, and cause the exercise of

---

**3.** Among the arguments raised by defendants in contesting the validity of plaintiffs' § 1985(3) claim are the following: (1) because women seeking abortions made a conscious choice to conceive and were not forced to become pregnant, they cannot be a proper § 1985(3) class of individuals; and (2) because defendants' conspiracy was motivated by economic animus ("i.e., to close down profit-making abortion clinics"), the conspiracy is beyond the reach of § 1985(3). The court rejects both of these arguments. First, it is clear that not all women seeking abortions made a conscious, or even an inadvertent, choice to become pregnant. Second, the notion that defendants' motive was "economic" is simply not believable in light of the record evidence. *See, e.g.,* Transcript of Hearing, November 15, 1988, at 74 (indicating that plaintiff Women's Suburban Clinic, one of targets of defendants' blockades, is a *nonprofit* organization).

their rights to become a "harrowing and injurious experience." In support of their argument, plaintiffs have submitted affidavits from plaintiff clinic personnel stating that the clinics provide services to women who reside in Pennsylvania, New Jersey, Delaware, New York, Maryland, and other states. *See* Plaintiffs' Exhibits B, D, and E. Each affidavit includes copies of reports submitted to state health authorities which indicate that the clinics provide services to women from states other than Pennsylvania. Although not mentioned by plaintiffs in their motion, the court notes also that testimony during the civil contempt hearing on November 15–16, 1988, indicated that defendants' blockades on July 9, 1988, prevented one woman from receiving medical services at a clinic in New Jersey on the second day of a two-day abortion procedure and that this woman had to then travel to a clinic in Pennsylvania to obtain the required treatment.[4] *See* Mem.Op. at 6.

In opposition, defendants do not contest that out-of-state women obtain abortions at plaintiff clinics and that defendants blockaded the clinics. *See* Defendants' Answer at 12–13. Instead, defendants contend that there has been no showing that their actions actually deterred any travel or that impeding travel was one of their primary objectives.

■ Based on the foregoing, it is undisputed that defendants blockaded plaintiff clinics with the intention of "closing them down" and that women were prevented from obtaining services during the block-

ades.[5] In addition, the court finds that in at least one instance as described above (with a reasonable inference that the situation arose or will arise more often), a woman was forced to travel from New Jersey to Pennsylvania to obtain abortion services, after defendants' blockade prevented her from completing a the two-day procedure begun in New Jersey. Because women from out-of-state travel to plaintiff clinics seeking abortions and because defendants' blockades prevent women from obtaining abortions at plaintiff clinics, all of which defendants admit, the court finds that plaintiffs have conclusively shown that defendants actions have impermissibly interfered with and impaired the constitutional right of such women to travel freely. *See Griffin*, 403 U.S. at 106, 91 S.Ct. at 1800;[6] *New York State Nat'l Org. of Women v. Terry*, 704 F.Supp. 1247 (S.D.N.Y.1989) (plaintiffs need only show that exercise of the right to travel was penalized; undisputed facts established that activities of anti-abortion protesters obstructed out-of-state women's access to medical facilities).

#### b. *Right to Abortion*

■ As noted above, when the alleged conspiracy is aimed at a right protected only against state interference, the plaintiff must prove that the conspiracy included state involvement of some sort. *Carpenters*, 463 U.S. at 831–34, 103 S.Ct. at 3357–59; *Rashid v. Public Sav. Ass'n*, 97 B.R. at 190 (E.D.Pa.1989); *New York State Nat'l Org. of Women v. Terry*, 704 F.Supp. at 1258–59 (S.D.N.Y.1989). In addition to the "right to travel" claim, plaintiffs claim

---

4. The medical aspects of abortion and possible effects of a blockade on women seeking an abortion are discussed in the Memorandum Opinion, at 11.

5. This is, of course, with the exception of certain women who were able to receive services at one clinic on the day of a blockade by arriving at 6:00 a.m., several hours before the clinic's normal opening. *See* Mem.Op. at 13–14.

6. In *Griffin*, black citizens of Mississippi alleged that they were attacked by white citizens of Mississippi while traveling upon federal, state, and local highways in an automobile owned and operated by a man from Tennessee. The Supreme Court held that:

Under these allegations it is open to petitioners to prove at trial that they had been engaging in interstate travel or intended to do so, that their federal right to travel interstate was one of the rights meant to be discriminatorily impaired by the conspiracy, that the conspirators intended to drive out-of-state civil rights workers from the State, or that they meant to deter the petitioners from associating with such persons. This and other evidence could make it clear that the petitioners had suffered from conduct that Congress may reach under its power to protect the right of interstate travel. *Griffin*, 403 U.S. at 106, 91 S.Ct. at 1800.

that defendants violated § 1985(3) by interfering with the exercise of their "constitutional right to abortion." One of the essential elements of this claim, then, is a showing of state involvement. *New York State Nat'l Org. of Women,* at 1260; *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165 (D. Ore.1988); *Feminist Women's Health Center v. Roberts,* No. C86–161 (W.D. Wash. March 11, 1988).

Plaintiffs claim that by blocking access to abortion clinics and by failing to notify police of their next target, defendants have acted to render police officials incapable of securing women seeking abortions equal access to medical treatment. Additionally, plaintiffs assert that the purpose of defendants' activities is to influence state and federal legislators to change current abortion law. Such actions, plaintiffs claim, satisfy the statute's requirement of state involvement.

As indicated above, "[w]here the claimed violation of civil rights involves a right secured against interference only by the state, a § 1985(3) violation is proven only if 'the state is involved in the conspiracy or ... the aim of the conspiracy is to influence the activity of the state.'" *California Republican Party v. Mercier,* 652 F.Supp. 928, 935 (C.D.Cal.1986) (quoting *Carpenters,* 463 U.S. at 830, 103 S.Ct. at 3357). With regard to plaintiffs' claim that the purpose of defendants' activities is to influence state and federal legislators to change current abortion law, the court has reviewed the materials submitted by plaintiffs on this issue and finds that such materials do not sufficiently establish that this is the purpose of defendants' activities. *Cf. Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 712 F.Supp. 165 (D.Ore.1988) (on a motion to dismiss, plaintiffs' allegation that purpose of an anti-abortion conspiracy was to influence state and local officials to deny constitutional rights of women seeking abortions satisfied § 1985(3)'s state action requirement).

With regard to plaintiffs' claim that the state involvement requirement is met because law enforcement officials are involved to the extent of planning for and policing defendants' protest activities, the court finds the level of activity alleged too minimal to satisfy § 1985(3)'s state action requirement. Similarly, the court is unwilling to conclude that the failure of anti-abortion protesters to notify police of their next target (thereby allegedly rendering the police incapable of securing equal treatment for women seeking abortions) satisfies § 1985(3)'s state involvement requirement. *But see New York State Nat'l Org. of Women v. Terry,* 704 F.Supp. at 1260 (S.D.N.Y.1989) (failure of anti-abortion protesters to notify police of their next target rendered the police incapable of securing equal treatment for women seeking abortions; such action satisfies § 1985(3) state involvement requirement, citing *Novotny v. Great American Fed. Sav. & Loan Ass'n,* 442 U.S. 366, 384, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring)).

Because the court finds that plaintiffs have not shown the requisite state involvement on their "right to abortion" claim, the court will grant summary judgment on this claim in favor of the defendants and against the plaintiffs.

### 3. *Acts in Furtherance of the Conspiracy*

Defendants admit that they conspired and that they blockaded the plaintiff clinics. *See* Defendants' Answer at 11–13. This satisfies the third element of proving a § 1985(3) violation.

### 4. *Injury or Deprivation of a Constitutional Right*

The discussion above in sections III.A.2 and III.A.3 establish that plaintiffs have proven that women seeking abortions in the metropolitan Philadelphia area have been injured and or deprived of their constitutional rights.

### 5. *Summary of Plaintiffs' § 1985(3) Claim*

As explained above, the court finds that plaintiffs have shown that: (1) defendants conspired; (2) for the purpose of depriving women seeking abortions in the metropolitan Philadelphia area of their constitutional

right to travel; and (3) that defendants blockaded plaintiff clinics in furtherance of the conspiracy; (4) thereby injuring said women or depriving them of their rights as citizens of the United States. *See United Bhd. of Carpenters and Joiners of America, Local 610 (Carpenters) v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983). Accordingly, the court will grant summary judgment in favor of plaintiffs and against defendants on the § 1985(3) (right to travel) claim. Also, for the reasons explained above, the court will grant summary judgment in favor of defendants and against plaintiffs on the § 1985(3) (right to abortion) claim.

I turn now to a discussion of plaintiffs' common law claims.

### B. Trespass

The common law tort of trespass to land serves to provide relief for invasions of one's right to exclusive use and possession of property. *Northeast Women's Center v. McMonagle,* 670 F.Supp. 1300, 1311 (E.D.Pa.1987) (citing *Hennigan v. Atlantic Refining Co.,* 282 F.Supp. 667, 679 (E.D. Pa.1967), *aff'd,* 400 F.2d 857 (3d Cir.1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969)). Under Pennsylvania law, "[o]ne who intentionally enters land in possession of another without a privilege to do so is liable ... to the possessor of the land as a trespasser...." *Northeast Women's Center,* 670 F.Supp. at 1310–11 (quoting *Kopka v. Bell Telephone Co.,* 371 Pa. 444, 450, 91 A.2d 232, 235 (1952). Similarly, "one who authorizes or directs another to commit an act which constitutes a trespass to another's land is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself...." *Northeast Women's Center,* 670 F.Supp. at 1311.

Plaintiffs assert that the "undisputed facts" establish that defendants intentionally entered upon the private property of the Women's Suburban Clinic, the Northeast Women's Center, and the Cherry Hill Women's Center without the consent of the owners of these facilities. Plaintiffs' Mem. of Law in Support of Motion for Summary Judgment [hereinafter "Plaintiffs' Mem."] at 31–32 (citing the court's Memorandum Opinion dated December 5, 1988, at 4–8).

After a hearing on plaintiffs' motion for civil contempt and in a Memorandum Opinion dated December 5, 1988, this court found defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue in civil contempt of the temporary restraining order issued June 30, 1988. Because that Memorandum contains a lengthy discussion of the activities of the defendants, the court will not repeat the same here. It is sufficient to state, however, that defendants Terry, McMonagle, and Foreman each played an active role in leading the blockades and protests at facilities covered by the TRO, and that the organization known as Operation Rescue was instrumental in organizing, coordinating, and participating in the aforementioned protest activities. Furthermore, it is clear that these blockades and protest activities included entry by the defendants, and or giving direction to others to enter, onto private property without consent of the possessors of those properties. *See* Mem.Op. at 4–10.

Based on the above information, plaintiffs have satisfied their burden by demonstrating an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Plaintiffs having satisfied their burden, the burden then shifts to the defendants, who must go beyond their pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Because defendants have made no mention of the trespass claim in their response to plaintiffs' motion for summary judgment, they have not met their burden under *Celotex.* Accordingly, plaintiffs' motion for summary judgment on the trespass claim will be granted.

### C. Intentional Interference with Business Relations

Under Pennsylvania law, a plaintiff must demonstrate the following in order to pre-

vail on an action for intentional interference with prospective contractual relations:

(1) that a prospective contractual relationship existed between the plaintiff and some third party; (2) that the defendants interfered with this relationship with the purpose or intent of harming the plaintiff by preventing the relationship from occurring; (3) that this interference was not privileged; and (4) that the plaintiff suffered actual harm or damage as a result of defendants' actions.

*Techno Corp. v. Dahl Associates, Inc.*, 535 F.Supp. 303, 306 (W.D.Pa.1982) (citing *Behrend v. Bell Telephone Co.*, 242 Pa.Super. 47, 61, 363 A.2d 1152, 1159 (1976)); *Zions First National Bank, N.A. v. United Health Club*, 704 F.2d 120, 125 (3d Cir. 1983).

Plaintiffs contend the following: defendants prevented patients from obtaining scheduled services at clinics on several occasions during the week of July 4, 1988; Operation Rescue literature indicates that by their actions, defendants intended to interfere with the business of the clinics; and plaintiffs suffered damages as a result of defendants' actions.

■■ With regard to defendants' protest and blockade activities during the week of July 4, 1988, the court's Memorandum Opinion dated December 5, 1988, makes clear the following facts: (1) plaintiff clinics had existing and prospective business relations with third parties (i.e., persons seeking abortions or other family planning services); (2) the protest and blockade activities of the defendants during the week of July 4, 1988, interfered with these relationships; (3) defendants Terry, McMona-gle, and Foreman were acting and directing others to participate in the protest and blockade activities, and the organization known as Operation Rescue was instrumental in organizing, coordinating, and participating in these activities; and (4) plaintiff clinics suffered actual harm or damage as a result of defendants' actions. *See* Mem.Op. at 4–10, 13–14. These facts establish the first, third, and fourth elements of a claim for intentional interference with contractual relations.

With regard to the second element, that is, whether defendants interfered with the clinic-patient relationship with the purpose or intent of harming the plaintiff by preventing the relationship from occurring, plaintiffs have presented "Operation Rescue" literature [7] indicating that Operation Rescue entails "pro-life Americans [placing] their bodies in front of an abortion mill, thereby preventing children from being killed and women from being exploited." Plaintiffs' Exhibit to Summary Judgment Motion, Exhibit 11. The literature describes the then-planned "rescue" in Philadelphia during the period July 4–6, 1988, and also describes two earlier, "successful" rescues in which pro-lifers prevented the opening of abortion clinics as a result of blockading activity. Furthermore, defendants admit that their conspiracy was motivated by a desire to "close down profit-making abortion clinics." Defendants' Answer at 11. Based on the conduct of the defendants during the week of July 4, 1988, *see* Mem.Op. at 7–10, the aforementioned Operation Rescue literature, and defendants' admission, the court finds it reasonable to conclude that defendants interfered

---

**7.** In their memorandum, plaintiffs cite four pieces of "Operation Rescue" literature bearing on the issue of intent or purpose of defendants' protest activities. One of the documents mentions a rescue planned for Philadelphia during the period July 4–6, 1988. *See* Plaintiffs' Exhibit 11. I conclude that I may consider this document under the standards contained in Fed.R. Evid. 901(a) and (b)(4). *See also Link v. Mercedes–Benz of North America*, 788 F.2d 918, 927 (3d Cir.1986) (circumstantial evidence may suffice to authenticate a document; "all that is required is a foundation from which a fact-finder could legitimately infer that the evidence is what the proponent claims it to be").

After comparison of this document with others marked as Plaintiffs' Exhibits 3, 20, and 21, and after considering the factors set forth in Fed.R.Evid. 901(b)(4), the court finds that it is a document prepared and distributed by defendant Operation Rescue. The document consists of two pages, bears the title "OPERATION RESCUE, PHILADELPHIA, JULY 4–6, 1988," describes Operation Rescue and past and planned "rescues" (including July 4–6, 1988, in Philadelphia), and includes a response form that indicates that it (along with "a one-time gift of ten dollars") should be sent to "Operation Rescue, P.O. Box 1180, Binghampton, NY 13902."

with the clinic-patient relationship with the purpose or intent of harming the plaintiff by preventing the relationship from occurring.

Based on the above information, the court finds that plaintiffs have successfully discharged their initial burden by making a showing sufficient to establish every element essential to their claim and identifying evidence which it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988). Plaintiffs having satisfied their burden, the burden shifts to defendants, who must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

In response, defendants do not dispute or rebut plaintiffs' contention that they interfered with the clinic-patient relationship with the purpose or intent of harming the plaintiff by preventing the relationship from occurring. Instead, defendants' only contentions are that plaintiffs did not sufficiently prove damages they suffered as a result of the defendants' actions at the contempt hearing, and that plaintiffs' dismissal of their damages claims in the underlying action estops them from claiming actual harm or damage.

With regard to the first contention, the court notes that the evidence adduced at the contempt hearing indicated that defendants' activities prevented plaintiff clinics from rendering services and prevented numerous patients from attending previously scheduled appointments for medical services. *See* Mem.Op. at 13–14. While this may have resulted in lost income for the clinics, plaintiffs did not present sufficient evidence at the contempt hearing to support an award of compensatory damages award for such harm. However, the court did find that certain plaintiff clinics suffered actual harm in the nature of unproductive employee work time as a result of defendants' protest activities during the

week of July 4, 1988, and awarded said clinics $2,308.03 in compensatory damages. *See* Mem.Op. at 13–14. The court finds that these damages constitute actual harm suffered as a result of defendants' interference with the relationship between plaintiff clinics and their patients. Additionally, the court finds no merit to defendants' argument that plaintiffs' dismissal of their claims for damages estops them from claiming that actual harm or injury resulted from defendants' actions.

After review of all evidentiary material in the record and based on the foregoing, the court finds that plaintiffs have made a showing sufficient to establish every element essential to their claim of intentional interference with prospective contractual relations. Furthermore, the court finds that there is no genuine issue as to any material facts regarding this claim. Accordingly, plaintiffs are entitled to judgment as a matter of law on this claim. *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

### D. False Imprisonment

Under Pennsylvania law, a claim for false imprisonment requires proof that an actor:

(1) ... intend[ed] to confine the other or a third person within boundaries fixed by the actor, and

(2) his act directly or indirectly results in such a confinement of the other, and

(3) the other is conscious of the confinement or is harmed by it.

*Horne v. Farrell,* 560 F.Supp. 219, 226 (M.D.Pa.1983); *Gagliardi v. Lynn,* 446 Pa. 144, 148 n. 2, 285 A.2d 109 (1971).

Plaintiffs contend specifically that this tort was committed by defendants at Women's Suburban Clinic on July 5, 1988, and at Northeast Women's Center on July 6, 1988. *See* Mem.Op. at 5–6. Based on a review of the evidentiary materials submitted by plaintiffs on this claim, the court is unable to conclude that plaintiffs are entitled to judgment on this claim as a matter of law. Specifically, the court is unable to conclude that the defendants against whom summary judgment is

sought intended to confine persons in the clinics, or that defendants' actions actually resulted in confinement of others. *See* Mem.Op. at 5–6 (although noting that entrances were blocked, also stating that some employees and police officers were able to enter and exit the clinics). Accordingly, the court will deny plaintiffs' motion for summary judgment on the false imprisonment claim.

### E. Intentional Infliction of Emotional Distress

In *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987), the Pennsylvania Supreme Court did not explicitly adopt or reject the tort of intentional infliction of emotional distress. *Id.*, 515 Pa. at ——, 527 A.2d at 988–89; *cf. id.* at ——, 527 A.2d at 995. In a concurring opinion, Justice Larsen stated his belief that the majority had "by implication" adopted the tort. *Id.* at ——, 527 A.2d at 995 (Larsen, J., concurring); *but see Ford v. Isdaner*, 374 Pa.Super. 40, 44, 542 A.2d 137, 139 (1988) ("*Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania").

■ In *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988), the Third Circuit's discussion of the tort assumes the existence of the tort in Pennsylvania, though neither *Kazatsky* nor *Ford* are mentioned by the court. In a recent opinion that includes a discussion of *Kazatsky*, Judge Rambo of the Middle District of Pennsylvania concluded that the tort exists under Pennsylvania law. *See Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D. Pa.1988); *see also Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168 (1988); *Paul v. Lankenau Hosp.*, 375 Pa.Super. 1, 543 A.2d 1148 (1988); *Rinehimer v. Luzerne County Comm. Coll.*, 372 Pa.Super. 480, 539 A.2d 1298 (1988); *cf. Daughen v. Fox*, 372 Pa. Super. 405, 539 A.2d 858 (1988) (viability of the tort unclear; however, conduct alleged was not sufficiently outrageous to state cause of action); *but see Clemens v. Gerber Scientific Inc.*, No. 87–5949, 1989 WL 3480 (E.D.Pa. Jan. 13, 1989) (O'Neill, J.) (tort of intentional infliction of emotional distress does not exist in Pennsylvania); *Ford*, 374 Pa.Super. 40, 542 A.2d 137 (1988) (same). Based on the above, the court concludes that the tort of intentional infliction of emotional distress is recognized under Pennsylvania law, albeit under limited circumstances.

As noted by the Third Circuit in *Cox*, the gravamen of the tort is that "the conduct complained of must be of an 'extreme and outrageous type.' " *Cox*, 861 F.2d at 395 (quoting *Rinehimer v. Luzerne County Comm. Coll.*, 372 Pa.Super. 480, 494, 539 A.2d 1298, 1305 (1988)). "It has been said that 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Cox*, 861 F.2d at 395 (quoting *Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987)).

■ Plaintiffs contend that defendants' activities and blockades constitute intentional infliction of emotional distress. Based on the record before the court, I am unable to conclude that the protest activities and blockading of the clinics by defendants constitutes "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox*, 861 F.2d at 395. Therefore, plaintiffs' motion for summary judgment on this claim will be denied.

### IV. RELIEF SOUGHT

Having determined that plaintiffs are entitled to judgment on the merits of their § 1985(3) claim as well as two common law claims, the court must consider the appropriate remedy. Plaintiffs seek entry of a permanent injunction similar to the preliminary injunction now in effect. *See* Order dated November 17, 1988. Plaintiffs must satisfy three requirements for a permanent injunction to issue: (1) the court's exercise of equity jurisdiction must be proper; (2) plaintiffs must actually succeed on the

merits of their claims; and (3) plaintiffs must show that the balance of equities tips in favor of injunctive relief. *Northeast Women's Center v. McMonagle,* 665 F.Supp. 1147, 1152–53 (E.D.Pa.1987).[8]

■■■ The court's exercise of equity jurisdiction is proper if: (1) plaintiffs have no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses preclude jurisdiction. *Northeast Women's Center v. McMonagle,* 665 F.Supp. at 1153. Examination of the record in this case, including the contempt hearing and the evidentiary material submitted with the motions for summary judgment, reveals that defendants have strong anti-abortion views and are willing to blockade abortion clinics, in direct defiance of a federal restraining order, and are willing to do so repeatedly. Furthermore, it is clear that defendants' actions interfere with both federal and common law rights of abortion clinics and their patients. For patients seeking abortion and other reproductive counseling and, in particular, those persons returning to a clinic for the second day of a two-day medical procedure, defendants' blockades cause real and very serious harm and injury for which no adequate legal remedy exists. *See* Mem.Op. at 10–11 (discussing medical aspects of abortion and effects of blockades on patients seeking services at a blockaded clinic); *see also New York State Nat'l Org. of Women v. Terry,* 704 F.Supp. at 1262 (S.D.N.Y.1989).

In sum, the court finds that plaintiffs have no adequate legal remedy, that their threatened injury is real, not imagined, and no equitable defenses preclude jurisdiction.[9] *See also Northeast Women's Center v. McMonagle,* 665 F.Supp. at 1153–54; *New York State Nat'l Org. of Women,* 704 F.Supp. at 1262–63. As such, plaintiffs have demonstrated that the court's exercise of equity jurisdiction is proper in this matter.

The second prerequisite for the issuance of permanent injunctive relief is actual success on the merits. As indicated above, the court has found that plaintiffs are entitled to judgment against defendants on their § 1985(3) (right to travel) claim and their state claims of trespass and intentional interference with contractual relations. Plaintiffs have, then, actually succeeded on the merits of several of their claims.

The third and final prerequisite for the issuance of permanent injunctive relief is that the balance of the equities must tip in favor of injunctive relief. In this regard, the court is well aware that defendants have a legitimate right to express their views on the issue of abortion. As recently emphasized by the Third Circuit, those opposed to abortion have "numerous *legal* alternatives ... available to pursue their goal of persuading women not to have abortions. For example, they could continue to march, go door-to-door to proselytize their views, distribute literature, personally or through the mails, and contact residents by telephone, short of harassment." *Northeast Women's Center v. McMonagle,* 868 F.2d 1342, 1352 (3d Cir.1989) (emphasis added). However, as this court previously observed, when defendants' activities impinge and interfere with the rights of others, the court might be forced and would not hesitate to impose reasonable time, place, and manner restrictions on defendants' conduct. *See* Mem.Op. at 16–17.

As explained above, defendants' blockades interfere with the rights of women seeking abortions to travel freely, the rights of abortion clinics to be free from nonprivileged invasions of their property, and the rights of the clinics and their patients to have contractual relations free from nonprivileged interference by others. Under the circumstances, the court finds that the balance of the equities tips strongly in favor of injunctive relief designed to protect the rights of plaintiffs against the unlawful conduct of the defendants, while

8. To the extent required in connection with the issuance of permanent injunctive relief, this memorandum shall constitute the court's findings of fact and conclusions of law under Fed.R. Civ.P. 52.

9. Defendants have not raised, and the court is not aware of, any equitable defenses that would preclude the court from exercising equitable jurisdiction in this matter.

at the same time preserving defendants' rights of free expression. *See also New York State Nat'l Org. of Women v. Terry*, 704 F.Supp. at 1262–63 (S.D.N.Y.1989); *Northeast Women's Center v. McMonagle*, 665 F.Supp. at 1159.

Plaintiffs having satisfied the three prerequisites for permanent injunctive relief, and the court in its discretion having determined that such relief is appropriate, plaintiffs' request for a permanent injunction will be granted. An appropriate injunction order, similar in content to the TRO and preliminary injunction in this matter, follows this memorandum.

## V. ATTORNEYS' FEES

Having prevailed on their § 1985(3) claim, plaintiffs may be entitled to attorney's fees under 42 U.S.C. § 1988. In this regard, the court notes that plaintiffs have already sought such fees related to the contempt proceedings in this matter. If plaintiffs seek additional, nonduplicative fees, they shall file a petition with the court no later than ten (10) days after the filing of this memorandum. Defendants' response, if any, shall be filed ten (10) days thereafter.

Appropriate orders follow.

## ORDER

AND NOW, this 21st day of March, 1989, in accordance with the accompanying memorandum, it is hereby Ordered as follows:

1. Plaintiffs' motion for summary judgment is GRANTED as to the following claims: (a) § 1985(3) (right to travel) claim; (b) trespass; and (c) intentional interference with contractual relations. Accordingly, JUDGMENT IS ENTERED in favor of plaintiffs and against defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue on these claims.

2. Defendants' motion for summary judgment is GRANTED as to the following claims: (a) § 1985(3) (right to abortion) claim; and (b) intentional infliction of emotional distress. Accordingly, JUDGMENT IS ENTERED in favor of defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue, and against plaintiffs on these claims.

3. Plaintiffs' motion for summary judgment on their false imprisonment claim is DENIED.

4. The motion of defendants other than American Life League and Judy Brown for summary judgment is DISMISSED as moot, in light of the court's memorandum and the rulings in paragraphs 1–3 above.

5. The motion of all defendants for partial summary judgment on count V (§ 1985(3)) (docket entry no. 132) is DENIED.

6. In accordance with the accompanying memorandum, it is hereby Ordered that Plaintiffs' request for PERMANENT INJUNCTIVE RELIEF is GRANTED as follows:

Defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue, the officers, directors, agents and representatives of defendants, and all other persons acting in concert with them are PERMANENTLY AND FINALLY ENJOINED AND RESTRAINED in any manner or by any means from:

(a) trespassing on, blocking, obstructing ingress or egress from any facility at which abortions are performed in the City of Philadelphia or metropolitan area (including the City of Allentown, Pennsylvania, and Cherry Hill, New Jersey) and,

(b) physically abusing or tortiously harassing persons entering, leaving, working at, or using any services at any facility at which abortions are performed in the City of Philadelphia and metropolitan area (including the City of Allentown, Pennsylvania, and Cherry Hill, New Jersey) provided that: (i) "sidewalk counseling", consisting of reasonably quiet conversation of a nonthreatening nature conducted by not more than two people for each person they are seeking to counsel, shall not be prohibited; (ii) no one is required to accept or listen to "sidewalk counseling" and should anyone decline such counseling, that person shall have the absolute right to leave or walk

away without harassment; (iii) "sidewalk counseling" as defined here shall not limit the right of the Police Department and/or the United States Marshal to maintain public order by reasonably necessary rules and regulations as they decide are necessary at any particular demonstration site.

(c) Failure to comply with this Permanent Injunction Order by defendants Randall Terry, Michael McMonagle, Joseph Foreman, and Operation Rescue, the officers, directors, agents and representatives of defendants, and all other persons acting in concert with them and having actual knowledge of the order, shall subject such persons/organizations to a $5,000 fine for the current violation. In addition, violation of the order by the persons listed in paragraph 7 below will result in the imposition of additional fines as explained in that paragraph.

7. The court hereby IMPOSES AND SUSPENDS conditional coercive fines in the amount of $5,000 for each past violation of this court's temporary restraining and preliminary injunction orders and $5,000 for each future violation of this Permenant Injunction Order. The amount of fines based on past violations so imposed and suspended is as follows: Randall Terry, $10,000; Michael McMonagle, $10,000; Joseph Foreman, $10,000; Tina Krail, $5,000; and Operation Rescue, $10,000. Any future violation(s) of the permanent injunction order by these persons/organizations or any of them will result in the immediate withdrawal of suspension and imposition of these fines, and any future violation of the permanent injunction order will trigger both the fines based on past violations and a $5,000 fine for the current violation. Any such fines will be paid to the court and will be disbursed by further Order of this court.[10]

8. If plaintiffs seek additional, nonduplicative attorneys' fees, they shall file a petition with the court no later than ten (10) days after the filing of this memorandum

and order. Defendants' response, if any, shall be filed ten (10) days thereafter.

AND IT IS SO ORDERED.

---

10. This paragraph, dealing with conditional coercive fines, supercedes and replaces paragraph 4 of the court's Order dated December 5, 1988 (dealing with the same topic).