**James R. WHITE, Appellant,**

v.

**WESTINGHOUSE ELECTRIC COMPANY, Appellee.**

**No. 88–3157.**

United States Court of Appeals, Third Circuit.

Argued July 27, 1988.

Decided Nov. 25, 1988.

Rehearing and Rehearing In Banc Denied Jan. 5, 1989.

---

James R. Duffy (argued), Duffy, Israel and Specter, Pittsburgh, Pa., for appellant.

John J. Myers, (argued), Eckert, Seamans, Cherin and Mellott, Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

James White appeals a district court order granting his former employer, Westinghouse Electric Company (Westinghouse), summary judgment in his age discrimination action.[1] Because evidence of the timing of White's discharge is sufficient to raise a genuine issue of material fact, we will reverse and remand this case for further proceedings.

### I.

James White began working for Westinghouse in 1956 as a traffic clerk. While with Westinghouse, he occupied various positions. He became Manager of Transportation, Power Systems Projects, in 1973 and Manager of Transportation, Nuclear International Product, in 1980. In 1982, Westinghouse consolidated White's transportation manager position with another held by Jeffrey Neubert. Westinghouse assigned the resulting single position to the younger Neubert and gave White the newly created position of Senior Engineer, Transportation, Nuclear Project. In this capacity, he was assigned to resolve difficulties on several Westinghouse projects in Spain and reported to Neubert.

In September 1985, White was relieved of all international project assignments. According to a memo dated September 5, 1985, signed by both White and Neubert, "[White's] job performance was not satisfactory." Appendix (App.) at 33. Neubert gave White a special assignment which he made deliberately vague "to allow [White] the opportunity to show ... the level of initiative that he could demonstrate." *Id.*

On November 5, 1985, Neubert notified White that he would be discharged effective January 31, 1986, because of a reduction in force. Westinghouse had an overall reduction goal of 5–10%. In order to meet it in the Nuclear Operations Division's Transportation Department, one of the department's ten members had to be discharged.[2] According to Neubert and Merle Marsh, Neubert's superior, White was selected for discharge for two reasons. His performance rating had been the lowest in the department in each of the two previous years[3] and his position on special assignment was the most expendable because its elimination would not affect other ongoing projects. Of the nine employees retained in the Transportation Department, two were older (58 and 52) and two just one year younger than White, who was 51 years old. White was not replaced, nor were his duties assigned to anyone else.

At the effective date of his discharge, White had worked for Westinghouse for 29¾ years. If he had achieved 30 years of service, he would have received higher benefits whether he sought early retirement or

---

1. The district court had jurisdiction under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–634 (West 1985). We have jurisdiction under 28 U.S.C.A. § 1291 (West Supp.1987).

2. About 550 persons were laid off throughout the Nuclear Operations Division as part of this reduction in force.

3. White was ranked tenth out of 10 in 1984 and ninth out of 9 in 1985 in performance evaluations prepared by Neubert.

full retirement at age 65.[4] In addition, he could have sought early retirement at age 58 rather than 60. White alleges that his numerous requests to extend his termination date to allow completion of 30 years of service were either ignored or denied. App. at 57.

## II.

When reviewing a district court's decision on a motion for summary judgment, we apply the same standard as the district court. *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. We view the evidence in the light most favorable to the non-moving party. *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). Doing so, we accept the non-movant's allegations as true and resolve any conflicts in his favor. *Gans v. Mundy,* 762 F.2d 338, 340 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). However, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

▉ To apply this standard we must identify the essential elements which White, as plaintiff, must prove in his action under the Age Discrimination in Employment Act.[5] In an ADEA action, the plaintiff bears the ultimate burden of persuasion on the issue of discriminatory intent. To meet it, he must persuade the factfinder that age was a determinative factor in the defendant employer's decision to discharge him. *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

▉ A plaintiff may prove his case by direct or circumstantial evidence. *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 791 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). "When direct evidence is available, problems of proof are no different than in other civil cases." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3d Cir.) (in banc), *cert. dismissed,* — U.S. —, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Because direct evidence of discriminatory intent is often unavailable, however, the Supreme Court has fashioned "a method of proof that relies on presumptions and shifting burdens of production." *Dillon v. Coles,* 746 F.2d 998, 1003 (3d Cir.1984). First set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), this three-prong allocation of production burdens was recently described by the Supreme Court as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden

---

**4.** In his affidavit, Martin Stones, Manager of Human Resources in the Nuclear Operations Division at the time of White's discharge, states that when White reaches age 60, "he will be eligible to receive a pension of $1,004.00 per month. If he applies for his retirement benefits at age 65 ... he will receive $1,434.28 per month. If Mr. White had reached 30 years of service, his monthly retirement benefits, were he to apply at age 60, would be $1,019.69. If he waited until he reached age 65, his monthly benefit, based on 30 years of service, would be $1,456.70." App. at 27. While the monthly differences may not seem great, they accumulate

substantially over White's life expectancy. *See infra* at 61–62.

**5.** The statute makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1985). However, the statute does not prohibit such action "where the differentiation is based on reasonable factors other than age." 29 U.S. C.A. § 623(f)(1) (West 1985). At the time of this case, the ADEA covered individuals between the ages of 40 and 70. 29 U.S.C.A. § 631(a) (West 1985). It has since been amended to cover individuals who are at least 40 years of age. 29 U.S.C.A. § 631(a) (West Supp.1988).

shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted). While the burden of production shifts because of the particular problems associated with proving discriminatory intent by indirect evidence, the ultimate burden of persuasion "remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093; *see also Chipollini*, 814 F.2d at 897; *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ The particulars of the showing required to establish a prima facie case depend on the factual circumstances. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In a reduction in force when a complaining employee is not replaced, he, as "a plaintiff alleging a discriminatory layoff need show only that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." *Massarsky*, 706 F.2d at 118 (footnote omitted); *see also Berndt v. Kaiser Aluminum & Chem. Sales Inc.*, 789 F.2d 253, 256–57 (3d Cir.1986). A prima facie case creates a presumption of discrimination and the burden of production shifts to the defendant to explain the plaintiff's discharge in light of some legitimate, non-discriminatory reason. If the defendant produces evidence which raises a genuine issue of fact, the presumption disappears and the burden of production

tion shifts back to the plaintiff to show that the defendant's stated reasons were mere pretext or not worthy of credence. At this point, the plaintiff's burden of production merges with his ultimate burden of persuasion. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Duffy*, 738 F.2d at 1396.

■ A plaintiff is not required to meet his burden of production by direct evidence alone. Instead, with respect to both his burden to establish a prima facie case of discrimination and his burden to show that the defendant's explanation for the discharge was mere pretext, "a plaintiff can prevail by means of indirect proof." *Chipollini*, 814 F.2d at 898.

### III.

#### A.

■ In the case before us, the district court found that White successfully made out a prima facie case for discriminatory discharge in a reduction in force case under *Massarsky* and *Berndt, supra.* We agree. White is in the class of persons protected by the ADEA. 29 U.S.C.A. § 631(a) (West 1985 & Supp. (1988). Westinghouse does not assert that he was not qualified for his job. Westinghouse retained three members of the Transportation Department under 40 years of age, and therefore not in the protected class. This establishes a prima facie case and shifts to Westinghouse the burden of producing some legitimate, non-discriminatory reason for discharging White.[6]

■ The district court found, and we agree, that Westinghouse met its burden of production. It offered two reasons for White's discharge: White's poor performance ratings and the expendability of his position on special assignment. This is enough to dispel the presumption of discrimination created by White's prima facie case. The burden of production shifts to

---

**6.** As already noted, White was not replaced in his position on special assignment, nor were his duties assigned to anyone. This is not surprising since those duties were expressly created to allow White to demonstrate his individual initiative and job performance. The district court

noted that White's last previous substantive duties, as senior engineer on the Spanish nuclear project, were assigned to Kent Kirkham, who was then 37 years old. District Court Memorandum Opinion at 9.

White, requiring him to produce evidence from which a factfinder could infer that Westinghouse's explanation was mere pretext.

White points to two kinds of evidence to show that Westinghouse's purported reasons for his discharge were only a pretext for intentional discrimination.[7] First, he identifies evidence which allegedly shows a corporate "policy" aimed at reducing the average age of managers in the Water Reactors Division. Second, White points to the timing of his discharge, just three months before his completing 30 years of service, which prevented him from taking early retirement at 58 years of age rather than at 60 and from receiving increased pension benefits.

### B.

White offers three pieces of evidence to show a corporate "policy" designed to reduce the average age of Westinghouse managers. First, he states in his affidavit that during the period from 1968 to 1972, he reviewed a Westinghouse five-year strategic plan "the objective of which was to reduce the average age of managers within the Water Reactors Division." In rejecting this as sufficient to create a genuine issue of material fact as to intentional discrimination, the district court noted that White was made a manager in that division when he was 45 or 46 years of age, already within the class protected by the ADEA. The district court's difficulty, on this record, in finding that a goal from 15 years ago can establish intentional discrimination today is understandable. There is no indication that the means to reach this goal was the discharge of older managers, the hiring of younger ones, or both. Nor is there any evidence suggesting that anything resembling this "plan" existed when White was discharged.

White also alleges that statements made by two Westinghouse managers show that Westinghouse's explanation for his discharge is not believable. According to White's affidavit, Martin Stones, Manager of Human Relations for Westinghouse's Nuclear Operations Division, circulated an electronic mail letter on December 23, 1985, "discussing the 1986 promotability program." App. at 59. In that letter, Stones allegedly stated: " 'a further comment from my personal recollection of the Moore reviews last year: particularly in the catagory [sic] of the replacements, Jim was looking for the real up and coming younger managers and professionals. He was not impressed by third replacements who were "mature" in years!' " *Id.* White did not produce the letter itself.

The district court had "difficulty linking the opinions expressed in the letter to the question of whether or not Westinghouse fired White on account of his age." Dist. Ct.Mem.Op. at 13. We agree. The quoted portion of this letter speaks of "the replacements," which may mean newly hired individuals. It is part of what White himself claims is a "promotability program." At most, the letter refers to either promotion or hiring; it says nothing of terminations.

Finally, in his affidavit White offers a statement James Moore, Westinghouse's Vice–President and General Manager, made during an interview with a producer from NBC on August 4, 1986.[8] During that interview, Moore allegedly stated that "we've been training younger people and force feeding the pipeline. If we have been asleep at the switch, we could have wound up with a lot of grey beards and no one coming along." Like Stones' letter, this statement refers, at most, to promotions or hiring; it says nothing about terminations.

With respect to these three items proffered by White to show pretext we agree with the district court that they are insufficient, alone or in combination, to meet White's production burden on the pretext

---

7. We evaluate this evidence here only to determine whether it raises a genuine issue of material fact sufficient to preclude summary judgment. We express no opinion as to its relevance at trial.

8. Moore is the person referred to in Martin Stones' electronic mail letter.

issue and raise a genuine issue of material fact.

### C.

With respect to White's second category of pretext evidence, our conclusion is different. He had 29¾ years of service with Westinghouse when he was discharged. After 30 years of service, he could have chosen early retirement at age 58 instead of age 60. His retirement benefits, no matter when he retired, would have been greater. The district court acknowledged that "White raises a compelling argument that Westinghouse may have timed his discharge so as to avoid paying him an additional two years of pension benefits." Dist.Ct.Mem.Op. at 10. It calculated that "discharging White before his thirtieth anniversary saved Westinghouse two years of early retirement pension benefits totalling $24,472.56, plus $15.69 per month for the rest of his life, if he chooses early retirement." *Id.* The district court concluded that "it seems that Westinghouse did indeed realize a significant savings by laying him off just short of his thirtieth anniversary." *Id.*

The district court, however, dismissed this "compelling argument" as irrelevant to the issue of age discrimination. *Id.* at 11–12. It considered this evidence potentially relevant only to the issue of interference with pension rights under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 *et seq.* (West 1985 & Supp.1988). *Id.* at 12 n. 1. Focusing on the dollars involved, the district court concluded that "[t]he fact that Westinghouse may have fired White three months earlier to save pension benefits does not go to the question of whether White's age was a determinative factor in their decision to fire him." *Id.* at 12.

We disagree. Focusing only on the dollar amounts of the pension benefits ignores the fact that such amounts are inextricably linked to an employee's years of service to the company and, hence, to his age. In *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir.1987), the plaintiff's "high salary was a direct result of his many years of employment." *Id.* at 1203. He was laid off after a plant closing and replaced by a lower paid younger employee. The district court found that although the plaintiff had established a prima facie case for discrimination, cost savings on salary was a legitimate, non-discriminatory reason for discharge. The United States Court of Appeals for the Seventh Circuit, in reversing the district court's judgment for the employer, cautioned that using pay as a "proxy" for age should only be done on a case-by-case basis.[9] This approach should apply to the issue of pretext as well as to the issue of an employer's justification for discharge. Furthermore, pension benefits are more closely and consistently tied to seniority and age than is pay.

In the context of a motion for summary judgment, the district court cannot decide issues of fact. The timing of White's discharge raises a genuine issue of material fact as to whether Westinghouse's proffered reasons for discharging White were merely a pretext for impermissible discrimination. The district court should have denied defendant's motion for summary judgment and let the case proceed to trial. Accordingly, we will reverse the district court's order granting Westinghouse's motion for summary judgment and remand this case for further proceedings consistent with this opinion.

9. In *EEOC v. City of Altoona,* 723 F.2d 4 (3d Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2386, 81 L.Ed.2d 344 (1984), we reviewed a state statutory provision requiring that the most senior among those eligible for pension retirement should be laid off first in a reduction in force. On the issue of whether this statute provided a legitimate, non-discriminatory reason for discharge, we stated that "seniority is in section 11 inexorably linked with age, and cannot be viewed as a separate factor." *Id.* at 6. Although *City of Altoona* discussed this linkage in the context of section 11 of the Third Class Cities Firemen's Civil Service Act, Pa.Stat.Ann. tit. 53, § 39871 (Purdon 1957), common sense indicates that seniority and age are "inexorably linked" in any context.