**GOULD, INC., Plaintiffs,**

v.

**A & M BATTERY AND TIRE SERVICE, et al., Defendants.**

**Civil Action No. 3:CV–91–1714.**

United States District Court, M.D. Pennsylvania.

Jan. 29, 1997.

Dennis Suplee, John Armstrong, Richard A. Barkasy, Edward McBride of Schnader,

---

Harrison, Segal & Lewis, Philadelphia, PA, for plaintiffs.

William Kriner of Kriner, Koerber & Kirk, PC, Clearfield, PA, for Novey Metal Co.

Richard Brickwedde of Green & Seifter, Syracuse, NY, for Louis Perlman and Sons, Inc. and S. Kasowita & Sons.

Michael Flannelly of Morgan & Flannelly, York, PA, for Larami Metal Co., Inc.

John Privitera of McNamee, Lochner, Titus & Williams, PC, Albany, NY, for Jacob Sher.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Defendants Hudson Scrap Metal, Inc. and Jacob Sher's Motion for partial summary judgment against Plaintiff Gould, Inc.. (Doc. 1417). The defendants (hereinafter collectively referred to as "Hudson Scrap") contend that Hudson Scrap "is not a responsible person under section 107(a)(3) of CERCLA with respect to used batteries it brokered for indirect sellers." (Doc. 1418, p. 7).[1] Furthermore, Hudson Scrap also contends that its liability should be reduced from 95% to 5%, representing the amount of scrap batteries sent to the site by Hudson Scrap. For the reasons as set forth *infra*, we shall deny Hudson Scrap's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the operation of the Marjol Battery Plant in Throop, Lackawanna County, Pennsylvania (hereinafter "the site") are known to all parties involved, the factual history can be found in the reported case of *Gould, Inc. v. A & M Battery & Tire Service, et al.,* 933 F.Supp. 431 (M.D.Pa.1996). However, for the purposes of addressing the present motion, a brief recitation of the facts pertinent to Hudson Scrap is as follows.

Hudson Scrap is a wholesale scrap dealer, "concentrating on the purchase and sale of recyclable products, particularly non-ferrous metal, such as scrap lead, stainless steel, aluminum, copper and brass." (Doc. 1419, Exh. 2, pp. 1–2, ¶ 3). It was considered a "premier broker" in the area, conducting its brokering service within a one hundred and fifty mile boundary of its operations, (Doc. 1419, Exh. 3, p. 59), as well as Marjol's biggest broker, conducting approximately 95% of its brokerage work for Marjol. (Doc. 1419, Exh. 5, p. 227).

As a broker, Hudson Scrap "would perform a service, [working] as the middle man through Marjol [who] would pick up the batteries and [Hudson Scrap] would pay [its] customers. [Hudson Scrap] worked on a one percent profit margin on a load of batteries." (*Id.*). Once Hudson Scrap knew of an indirect seller who was in need of disposing batteries, it would call the site, inform it that there were batteries that needed to be disposed, and suggest a time for pick up. (Doc. 1419, Exh. 3, p. 64). Contact personnel at the site would then contact the indirect seller and finalize the plans for pick-up. (Doc. 1419, Exh. 3, p. 65). Finally, Marjol would pay Hudson Scrap for its services, including Hudson Scrap's mark up cost.

Hudson Scrap openly admits and does not contest that it performed the brokering service. However, Hudson Scrap argues that a broker, "as a matter of law", cannot be liable under CERCLA.

### DISCUSSION

**Standard of Review**

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will only be granted if there is no genuine issue of material fact and if the moving party is entitled to relief as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the applicable law in the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might

---

1. While acting as a broker among Gould and other parties for the disposal and sale of spent batteries, Hudson Scrap also deposited some waste at the Marjol Site which it attributed to its own business.

return a verdict for the non-moving party. *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir.1987). In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir.1988). A moving party is entitled to a judgment as a matter of law if the nonmoving party does not make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Once the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988), the nonmoving party is required by Fed.R.Civ.P. 56(e) to go beyond the pleadings by way of affidavits, depositions or answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must proffer evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987).

When reviewing a motion for summary judgment, the court must decide whether or not there is a genuine issue of material fact which must be resolved at trial or whether the evidence is so one-sided that one party will prevail over the other. *Groff v. Continental Insurance Co.*, 741 F.Supp. 541 (E.D.Pa.1990). "Where factual controversies exist, disputes over material facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment." *Metro Transportation Co. v. North Star Reinsurance Co.*, 912 F.2d 672, 678 (3d Cir.1990).

We note that Hudson Scrap states in its brief in support of its motion that "this Court has significant opportunity to advance settlement of this case by granting Hudson Scrap's motion." (Doc. 1497, p. 6). Summary judgment determines whether or not there is a genuine issue of material fact that requires the case to proceed to trial. While settlement negotiations may follow the grant or denial of summary judgment, the court's focus is on the question of the existence of material fact disputes.

Hudson Scrap, relying heavily on the unreported Illinois case of *CP Systems, Inc. v. Recovery Corp. of Ill.*, 1994 WL 174162 (N.D.Ill.1994), contends that it is not a "responsible person" under § 107(a) of CERLCA with respect to used batteries it brokered for indirect sellers. Specifically, Hudson Scrap contends that its dealings with its scrap dealing customers do not meet any of the specific tests for arranger liability.[2] We state at the onset that we do not find the *CP Systems* decision persuasive, as it was essentially based upon a Rule 12(b)(6) standard. Furthermore, in a previous motion presented to the Court by defendant Denver Construction Corporation t/a Lukens Metal and Harold Strauss in his own capacity, also a broker, (Doc. 1133), we denied a similar motion by Order of Court dated June 17, 1996 (Doc. 1292), stating that "this Court has previously determined that a party that sells junk batteries to a battery-breaking company faces arranger liability under CERCLA." (Doc. 1292, p. 3). We relied upon *Catellus Development Corp. v. United States*, 34 F.3d 748 (9th Cir.1994) and *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130 (M.D.Fla.1994), and our decision remains the same.

While it is true CERCLA does not expressly state a broker is liable for transporting waste to a site, that does not necessarily mean such a person has no liability. For example, Hudson Scrap contends that it is not liable as it did not own or possess the hazardous substance. While the facts show

---

**2.** The three tests for arranger liability are: (1) whether the party owned or possessed the hazardous substance which caused the damages; (2) whether the person had authority and control over the manner of disposal and selection of the

site for disposal; and (3) whether there is a substantial nexus between the parties, which usually requires a substantial degree of responsibility of disposal by the arranger. *CP Systems*, 1994 WL 174162 at *3.

that Hudson Scrap did not own any of the batteries it brokered for numerous scrap dealers, the facts do affirmatively show that Hudson Scrap had agreements or arrangements with such scrap dealers to dispose of the spent batteries. Such arrangement is squarely in line with the very language of § 107(a)(3), which imposes liability on:

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

While CERCLA does not define the phrase "otherwise arranged for", the word arranged "is a general term following in a series two specific terms and embraces the concepts similar to those of 'contract' and 'agreement'. All of these terms indicate that the court must inquire into what transpired between the parties and what the parties had in mind with regard to disposition of the hazardous substance." *United States v. Cello–Foil Products, Inc.*, 100 F.3d 1227, 1231 (6th Cir.1996).

We find the facts affirmatively reveal that Hudson Scrap *did* engage in arrangement for disposal of spent batteries, for it made the initial contact to the site. (Doc. 1470, Exh. C, p. 64). Hudson Scrap also received a profit margin from its dealings with the site. (Doc. 1470, Exh. C, p. 59; Doc. 1470, Exh. D, p. 451).[3] And even though the batteries were picked up from the scrap dealer's place of business by a Marjol truck, Marjol would not have been there had Hudson Scrap not made the initial contact. We also reject Hudson Scrap's argument that it is not liable as an arranger for it did not own or possess the spent batteries it brokered for other scrap dealers. "Requiring continuity of ownership or control for section 107(a)(3) liability would make it too easy for a party, wishing to dispose of a hazardous substance, to escape by a sale its responsibility to see that the substance is safely disposed of." *Catellus Development Corp.*, 34 F.3d at 752. *See also United States v. Bliss*, 667 F.Supp. 1298, 1307 (E.D.Mo.1987) (a party need not have actual control or ownership over the hazardous waste in order for § 107(a)(3) liability to attach).

As previously stated, Hudson Scrap decided to contact Marjol and not another site for the scrap dealers. This makes Hudson Scrap's argument that it cannot be liable because it did not have the authority and control over the selection of the site for disposal of the spent batteries unpersuasive.[4]

### B. The Reduction of Liability

Finally, Hudson Scrap contends that its liability should be reduced by approximately 95% to the percentage of its own batteries it brought to the site. Since we have found that Hudson Scrap faces liability as a broker for the batteries it delivered to the site, there is no merit to the argument for a reduction in liability based on their ownership of the batteries.[5]

### CONCLUSION

Based upon the foregoing reasons, we shall deny Hudson Scrap's motion for summary judgment. (Doc. 1417).

---

3. Although the parties disagree as to the amount of profit margin Hudson Scrap received from Marjol for its brokering service, such information is irrelevant. Whether it was 1%, 10% or 100%, Hudson Scrap *did* receive an economic benefit from its brokering services with Marjol.

4. Because we find that Hudson Scrap is a "responsible person" under § 107(a)(3), there is no need to address Hudson Scrap's argument that there was no nexus between it and the disposal of the spent batteries.

5. The specific damages for which each defendant will be liable shall be determined at the allocation stage of the trial.