**Robert G. ERNEST, Plaintiff,**

v.

**The PLAN ADMINISTRATOR OF THE TEXTRON INSURED BENEFITS PLAN, Textron, Inc.; The Paul Revere Life Insurance Co., Defendants.**

**No. 4:CV–00–0511.**

United States District Court,
M.D. Pennsylvania.

Dec. 20, 2000.

---

Robert G. Ernest, Danville, PA, Pro se.

Andrew F. Susko, Tricia A. Thomas, White and Williams, Platte B. Moring, III, Elizabeth A. Venditta, White and Williams, Allentown, PA, for Defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On February 25, 2000, plaintiff Robert G. Ernest, proceeding *pro se*, commenced this action with the filing of a complaint in the Court of Common Pleas, Montour County, Pennsylvania. Plaintiff claims entitlement to monthly income benefits for disability under a policy issued by The Paul Revere Life Insurance Co. (Paul Revere) in conjunction with a collective bargaining agreement between plaintiff's union and his former employer, Textron, Inc. (Textron).[1] Specifically, plaintiff claims that he is totally disabled due to acute bronchial spasm and occupational bronchitis, rendering him unable to work in his occupation as "Excello machine operator."

The case was removed to this court by notice of removal filed by defendant Paul

---

1. Paul Revere was erroneously named as "The Paul Revere Ins. Group, Textron" in the

Revere on March 20, 2000 on the ground that the agreement constitutes a plan subject to the terms of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 1001 et seq.

Now before the court are plaintiff's motion requesting this court to "apply the de novo standard of review and make a final judgment," and cross-motions for summary judgment. For the reasons that follow, we will deny plaintiff's motion for summary judgment and grant defendants' motion, pursuant to Fed.R.Civ.P. 56(c).

### DISCUSSION:

#### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

complaint.

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson* at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* at 393; *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

If the moving party satisfies its burden of establishing a prima facie case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. *Boyle* at 393 (quoting, *inter alia, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## II. STATEMENT OF FACTS

The facts at hand are, for the most part, not in dispute.[2] Plaintiff is a former employee of defendant Textron. As a benefit of his employment, plaintiff received one or more employment benefits, including a group long-term disability benefit under Textron's group policy with Paul Revere. According to the policy, benefits are payable only if the claimant becomes "totally disabled."[3]

On October 31, 1995, plaintiff submitted to Paul Revere an Employee's Statement for Disability Benefits. In his statement, plaintiff claimed to be totally disabled due to acute bronchial spasm and occupational bronchitis, rendering him unable to perform in his capacity as Excello machine operator.

On November 26, 1995, plaintiff's treating physician, Dr. Norman Ekberg, signed and submitted to Paul Revere an Attending Physicians' Statement that listed plaintiff's primary diagnosis as "sarcoidosis, stage II, and occupational bronchitis." Dr. Ekberg indicated that the plaintiff could not tolerate "exposure to inhaled vapors, dusts, [or] volatile agents," but reported that "patient may work in an atmosphere free of bronchial irritating substances with no limitation on physical activity."

After reviewing plaintiff's statement, Paul Revere's Customer Care Specialist, Jean Mantolesky, informed plaintiff that the medical documentation submitted was insufficient to support his claim of total disability and that additional information was necessary in order to reach a decision. Subsequently, on February 1, 1996, Paul Revere received a letter from Dr. Mark Guilfoose confirming the diagnosis of occupational bronchitis. Dr. Guilfoose reported that plaintiff was disabled from occupations that would expose him to environments containing "bronchial irritating substances such as industrial solvents and oils."

---

**2.** Generally, the facts recited herein have been adopted from defendants' Statement of Material Facts (record document no. 29, filed July 24, 2000) and the exhibits attached to "Answer of Defendants' ... to Plaintiff's Motion for De Novo Review and Defendants' Cross–Motion for Summary Judgment" (record document no. 27, filed July 24, 2000) (hereafter "Defendants' Answer").

**3.** The precise policy definition of "totally disabled" or "total disability" is provided below.

On February 2, 1996, Paul Revere referred plaintiff's file to Sharon Elliot, Vocational Rehabilitation Consultant. Elliot recommended review of plaintiff's file by a medical consultant and also contacted an ergonomist, who suggested the use of a prescribed respirator.

On February 6, 1996, Fred Lewis, Textron's Human Resources Manager, provided Mantolesky with a list of jobs held by plaintiff while employed at Textron and information as to whether or not plaintiff was exposed to coolant or cutting oil.[4] Lewis also indicated that Textron had been tested for oil mist on several occasions, with results well below the permissible exposure limit set by the Occupational Safety and Health Administration (OSHA).[5]

On February 20, 1996, Dr. Michael Theerman completed medical review of plaintiff's claim file. According to Dr. Theerman, plaintiff was precluded from working in a dusty, smokey or solvent-laden environment. Dr. Theerman concluded that plaintiff could not perform his occupation as Excello machine operator unless plaintiff was able to wear a respirator the entire day. Dr. Theerman also commented that if the job of tool and gauge inspector could be performed in a "clean room" and "not on the shop floor" then that job would not be precluded. On February 21, 1996, Mantolesky contacted Textron and spoke with Jodi Black, Human Resources Assistant, who verified that tool and gauge inspection was done in a separate and clean room without exposure to bronchial irritants.

On March 5, 1996, Paul Revere denied plaintiff's claim for long-term disability benefits, finding that plaintiff was not totally disabled under the terms of the policy. Specifically, benefits were denied because the medical evidence did not substantiate limitations that would pre-

clude the plaintiff from performing the duties of his occupation if reasonable accommodations were made. Paul Revere concluded that plaintiff's use of a prescribed respirator would be a reasonable accommodation that would not preclude him from performing his occupation. Additionally, plaintiff could perform the reasonably related occupation of tool and gauge inspector without being exposed to coolant or cutting oil. Paul Revere informed plaintiff of his right to appeal its decision.

Paul Revere received notice of plaintiff's appeal from a letter dated March 29, 1996. Included was a second claim form and an Attending Physicians' Statement of Disability from Dr. S. William Snover who diagnosed plaintiff as having "chronic, mechanical low back pain." Dr. Snover indicted that plaintiff was not totally disabled due to the above diagnosis. Also provided was a second statement from Dr. Snover diagnosing plaintiff with "repetitive motor disorder, carpal tunnel syndrome, right hand." Again, Dr. Snover indicated that plaintiff's carpal tunnel syndrome was not totally disabling. Additionally, plaintiff provided Paul Revere with a copy of a letter from Dr. Ekberg, dated March 25, 1996, in which Dr. Ekberg discussed the effectiveness of the respirator recommended by Paul Revere in its denial letter to plaintiff. Specifically, Dr. Ekberg stated that the respirator is associated with increased work of breathing, it does not filter 100 percent of the particles, and the only way for plaintiff to avoid bronchial irritation is to work in an environment free of volatile irritants.

On April 4, 1996, Paul Revere notified Bart Ecker, counsel for plaintiff in his appeal of Paul Revere's denial of benefits, that it was in the process of requesting additional medical records from plaintiff's

---

4. According to Lewis's report, plaintiff was previously employed as a tool and gauge inspector from July 27, 1992 – October 25, 1992 and January 7, 1993 – October 2, 1994.

5. OSHA has set an eight-hour, time-weighted average permissible exposure limit of 5 milligrams per cubic meter of air.

treating physicians. Paul Revere also requested that Ecker and plaintiff submit any additional information pertinent to plaintiff's claim for consideration in rendering its final decision. In response, Ecker resubmitted the aforementioned report by Dr. Ekberg, dated March 25, 1996, as well as various job descriptions for tool and gauge inspectors dated 1956, 1963, 1967 and 1968. Ecker argued that plaintiff's employment as a tool and gauge inspector would subject him to coolant and cutting oil.

On May 17, 1996, Dr. Laurence Cignoli rendered an opinion as to plaintiff's claim, concluding that he was not totally precluded from his occupation due to the carpal tunnel syndrome and lower back diagnoses. Indeed, plaintiff continued to work with those conditions prior to his claim for occupational bronchitis.

On May 24, 1996, Paul Revere notified Ecker and plaintiff of its final decision to deny plaintiff's claim for disability benefits. Based in part on Dr. Ekberg's March 25, 1996 letter, Paul Revere conceded that there was a reasonable probability that plaintiff was precluded from his job as Excello machine operator. However, the definition of disability under the plan mandates that plaintiff be "completely prevented, with or without reasonable accommodation, from performing any and every duty pertaining to his own occupation, or a reasonably related occupation based upon [his] education, training or experience." Based on a review of the most current job description for tool and gauge inspector, the duties in that position would be performed in a separate and clean room, and would not expose plaintiff to bronchial irritants.[6] Therefore, Paul Revere concluded that plaintiff did not qualify as "totally disabled" as defined by the policy at issue.

**6.** This job description was prepared on February 3, 1995.

**7.** The abuse of discretion standard is "essentially the same" as the arbitrary and capri-

## III. THE APPROPRIATE STANDARD OF JUDICIAL REVIEW

In construing plaintiff's *pro se* motion liberally, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff claims that de novo review of Paul Revere's decision to deny plaintiff long-term disability benefits is appropriate and that this court should overturn that denial. Defendants, on the other hand, argue that an arbitrary and capricious standard of review is appropriate and that they are entitled to summary judgment on the basis that the denial of benefits to plaintiff was well within the discretion of Paul Revere and was in no way arbitrary and capricious.

■ In *Firestone Tire & Rubber Co. v. Bruch,* the United States Supreme Court held that de novo review of benefit determinations by fiduciaries or plan administrators under ERISA is appropriate "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where an administrator or fiduciary has the discretion to interpret the plan in deciding a claimant's eligibility for benefits, then an administrator's interpretation is entitled to the arbitrary and capricious standard of review and "will not be disturbed if reasonable." *Id.* at 111, 109 S.Ct. 948; *Dewitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 520 (1997) (explaining the holding in *Firestone* ). The Court in *Firestone* further noted that where an administrator or fiduciary is acting under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. 948 (citing Restatement (Second) of Trusts § 187, Comment d (1959)).[7]

cious standard. *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 n. 4 (3d Cir.1993) (citing *Nazay v. Miller,* 949 F.2d 1323, 1336 (3d Cir.1991); *Daniels v. Anchor Hocking*

## A. Discretion Under the Policy

 In order to determine the appropriate standard of judicial review in this case, it is first necessary for this court to assess the discretionary authority, if any, granted to Paul Revere under the terms of the policy. Plaintiff claims that Paul Revere does not have express discretionary authority to construe the terms of the policy in determining eligibility for benefits. Defendants, however, contend that discretionary authority of Paul Revere need not be expressly granted but, rather, may be implied. We agree.

In addressing the discretionary authority of a plan administrator, the Third Circuit in *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, stated that "[d]iscretionary powers may be implied by a plan's terms even if not granted expressly." 944 F.2d 1176, 1180 (3d Cir.1991). In *Luby*, a beneficiary brought a claim against an ERISA fund and its administrator for the wrongful denial of death benefits. *Id.* at 1179. There, the court found that the language of the fund merely granted trustees the authority to set up a system of fund administration and did not impliedly grant discretionary authority to the plan administrator to interpret the terms of the plan and decide disputes between plan beneficiaries. *Id.* at 1180.

 In this case, we are persuaded that the policy grants Paul Revere, as claims administrator, the authority to make beneficiary determinations. Specifically, we find the discretionary authority of Paul Revere to determine eligibility for long-term disability benefits to be demonstrated, in part, by the following terms of the policy:

**WE MUST BE NOTIFIED OF INTENT TO FILE A CLAIM**[8]

Written notice of a claim for disability must be given to us. The notice must be in writing and must be filed at our Home Office in Worcester, Massachu-setts or any other office designated by us. Any claim is based on the written notice. The notice must be received by us within one year of the first date for which benefits are claimed....

**WE FURNISH PROOF OF LOSS FORMS**

After we receive notice of a claim, we provide a proof of loss form. This form should be furnished within fifteen days after we receive written notice.... Written proof should establish facts about the claim such as occurrence, nature and extent of the disability, injury or sickness or the loss involved.

**WHEN TO FILE PROOF OF LOSS**

The claimant must file written proof of the loss within one year of the start of the period for which we are liable. We have the right to require additional written proof to verify the continuance of any disability. We may request this additional proof as often as we feel is necessary, within reason.

If proof of loss is not submitted and received by us within the required time period, the claim may be reduced or invalidated....

 \* \* \* \* \* \*

**OUR RIGHT TO REQUIRE MEDICAL EXAMS**

We have the right to require, at our own expense, a medical exam of any claimant as often as it may reasonably be required.

Record Document 27, Exhibit A, 23rd page. Indeed, the policy requires written notice of any claim for benefits and proof of loss and disability. Additionally, the policy permits Paul Revere to evaluate whether proof of loss and disability are satisfactory and also authorizes Paul Revere to require medical examination of the claimant. Although the claimant carries the burden of establishing that he or she qualifies for benefits under the policy, we

Corp., 758 F.Supp. 326, 328–30 (W.D.Pa. 1991)).

8. According to the policy, "We" "Us" or "Our" means Paul Revere.

conclude that the policy on its face grants Paul Revere the discretion, albeit implied, to make the final determination as to a claimant's eligibility for benefits.

Reiterating the applicable law stated above, where a policy grants the administrator with discretion to determine eligibility for benefits and interpret its terms, the arbitrary and capricious standard of review applies. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. This, however, does not end our examination as to the exact standard of review this court should apply, as it is still necessary for us to assess whether Paul Revere was acting under a conflict of interest by both administering and funding benefits under the policy.

## B. Conflict of Interest

As noted above, our analysis hinges next on the issue of whether or not Paul Revere was acting under a conflict of interest mandating the application of a heightened arbitrary and capricious standard. Plaintiff claims that Paul Revere was biased and involved in a conflict of interest with Textron at the time it rendered its final decision regarding plaintiff's claim.[9] Defendants contend that Paul Revere was not biased or engaged in a conflict of interest when rendering either its initial denial of plaintiff's claim on March 5, 1996 or its final denial on May 24, 1996.

The Third Circuit, interpreting *Firestone*, recently addressed the standard of review to be applied in a situation involving an insurer that both funds and administers benefits under an ERISA plan. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir.2000).[10] Specifically, the court analyzed a situation comparable to the one presented here where the employer "pay[s] an independent insurance company to fund, interpret, and administer a plan," and held that this situation generally presents a conflict of interest that warrants a "heightened" standard of arbitrary and capricious review. *Id.* at 383.

■ The specific arrangement between Textron and Paul Revere involves Textron's payment of monthly premiums to Paul Revere for Paul Revere's role as claims administrator and insurer of Textron employees.[11] Notably, as with the insurance company in *Pinto*, the record here does not provide significant insight into the "precise nature of [Paul Revere's] internal structure." *Id.* at 388. However, "the typical insurance company is structured such that its profits are directly affected by the claims it pays out and those it denies." *Id.* Accordingly, because Paul Revere determines and provides benefits out of its own funds under the policy with Textron, we defer to *Pinto* and agree that there is potential for a conflict of interest to exist. Because we acknowledge

9. Specifically, plaintiff claims that defendants were biased in "not considering Doctor Ekberg's report on October 25, 1995," where Ekberg stated that plaintiff "cannot tolerate exposure to inhaled vapors, dusts, volatile agents." That statement refers to plaintiff's last date of treatment as October 25, 1995, but was signed on November 26, 1995 and submitted to Paul Revere for review. Plaintiff fails to acknowledge that the very same report includes remarks that "plaintiff may work in atmosphere free of bronchial irritating substances with no limitation on physical activity." Notably, plaintiff defeats his argument in his own reply brief by stating, "Defendant's [sic] admit the submission of Doctor Norman Ekberg['s] medical report of October 24, 1995," and further acknowledging that this report is "in the administrative record."

10. Chief Judge Becker noted that *Firestone* provided "opaque direction about how courts should review discretionary benefits denials by potentially conflicted ERISA fiduciaries." *Pinto*, 214 F.3d at 378, 383 (referring to the Supreme Court's instruction to apply an "arbitrary and capricious" standard but to consider any conflict of interest as a "factor" in applying this standard).

11. Throughout the opinion in *Pinto*, the court cites numerous district court cases in the Third Circuit and decisions from various Circuit Courts of Appeals which held that the "dual role" of an insurance company that acts as claims administrator and insurer of its own policy creates a conflict of interest that requires heightened scrutiny. *Id.* at 384, 389 n. 7.

that potential, we must next address how to apply the "sliding scale" standard of arbitrary and capricious review adopted by the Third Circuit.

## C. The Sliding Scale Approach

Under the arbitrary and capricious standard, we may overturn a denial of benefits only if the denial is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya,* 2 F.3d at 45 (further citation omitted). "This scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Id.* (further citation omitted).

█ The sliding scale approach suggested by Chief Judge Becker, however, provides for a factual examination of each case, and requires that the degree of deference given to a plan administrator's decision be modified based on the seriousness of the conflict presented. *Pinto,* 214 F.3d at 391–93. The greater the suspicion of conflict on behalf of the administrator, the less deferential the standard. *Id.* at 393. In applying this "heightened" review, we are instructed to be "deferential, but not absolutely deferential." *Id.* "[L]ook not only at the result—whether it was supported by reason—but at the process by which the result was achieved." *Id.*

In *Pinto,* the court provided little deference to the plan administrator's decision to deny the claimant benefits where the following "suspicious events" were presented:

(1) there were various procedural anomalies in the administrator's decision; (2) the administrator did not provide adequate explanation of how it reached its decision; and (3) there was evidence to support the likelihood of self-dealing. *Id.* at 393–94. Specifically, the court found that a genuine issue of material fact existed as to whether the insurer denied benefits arbitrarily and capriciously where the insurer reversed its initial determination that the employee was totally disabled without reviewing any additional medical information. *Id.*

█ In this case, we do not suspect that the conflict of interest on behalf of Paul Revere as both administrator and insurer of the policy presented an incentive to deny plaintiff's benefits. The policy reveals that premiums paid by the policyholder, Textron, are "waived while benefits are payable to [the employee] during any continuous period of disability after completion of his elimination period."[12] We are not concerned, nor persuaded, however, that this provision necessarily provided Paul Revere with a financial motive to deny plaintiff's claim given the amount of money at stake for a payout of benefits to a single employee.[13] We have not found any evidence of procedural anomalies in Paul Revere's decision or that Paul Revere failed to provide plaintiff with adequate information pertaining to its decision.[14] Accordingly, we will shape our arbitrary and capricious review of Paul Revere's benefits determination so as to grant a

**12.** Elimination period is defined, in part, as "the length of time that the employee must wait before benefits begin."

**13.** Plaintiff alleges that Textron and Paul Revere were "all part of the Textron Corporation and having [sic] a monetary interest in not paying benefits to Plaintiff." Defendants state that Textron and Paul Revere were separate corporations at the time of the denial of benefits to plaintiff.

**14.** Indeed, Paul Revere initially denied plaintiff's claim on March 5, 1996 and provided plaintiff with information pertaining to his right to appeal its decision and the proper

procedure to do so. Further, plaintiff's counsel had opportunity to submit additional information pertinent to plaintiff's disability claim for Paul Revere's review in rendering its final denial of benefits on May 24, 1996. In both letters of denial, Paul Revere set forth the reasons for its determination that plaintiff did not qualify for benefits under the policy, and the information used in making that decision. Additionally, plaintiffs union was provided with the medical documentation used in making that decision as well as a statement of plaintiff's job history while employed by Textron.

high level of deference to its decision, without being "absolutely deferential." *Id.*[15]

## IV. THE ADMINISTRATIVE RECORD

Plaintiff requests that we consider evidence "outside the administrative record" submitted to Paul Revere for review after its final decision to deny plaintiff disability benefits on May 24, 1996. Plaintiff claims that additional exhibits (submitted as "Plaintiff's Disclosure," record document no. 26, filed July 7, 2000) should be considered by this court "if the court grants Plaintiff [sic] Motion for the de novo standard of review."[16] Defendants argue that the scope of this court's evidentiary review is limited to the evidence before Paul Revere at the time of its final denial of plaintiff's claim. We agree.

"Under the arbitrary and capricious standard of review, the 'whole' record consists of the evidence that was before the administrator when he made the decision being reviewed." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir.1997) (further citations omitted). Here, Paul Revere made two denials, the first on March 5, 1996, and the final on May 24, 1996. We will consider all evidence before Paul Revere at the time of its final denial on May 24, 1996. *Id.* ("Given our conclusion that the district court should have asked only whether the Administrator's denial was arbitrary and capricious, on the basis of the record before the Administrator ... the relevant record on appeal is the evidence before the Administrator at the time of his final denial ..."). Hence, the scope of our review includes review of the documentation discussed above under the section captioned "Statement of Facts."

Plaintiff's claim file was first compiled on October 31, 1995, when Paul Revere received his statement of disability in which he claimed to be totally disabled due to acute bronchial spasm and occupational bronchitis. Defendants' Answer, Exhibit B. Plaintiff's medical records indicate that plaintiff's symptoms first appeared on June 12, 1995, and that he obtained medical treatment for these symptoms on August 2, 1995. Plaintiff was diagnosed with "sarcoidosis, stage II" and "occupational bronchitis."[17] Defendants' Answer, Exhibit D. All medical documentation submitted prior to Paul Revere's initial denial of benefits to plaintiff substantiate that plaintiff suffered from occupational bronchitis. The reports expressed that although plaintiff is generally precluded from work in his own occupation as Excello machine operator, he is not precluded from other work that would not expose him to volatile solvents or substances. Defendants' Answer, Exhibits D, I, M.

After Paul Revere's initial denial, but prior to its final decision as to plaintiff's claim on May 24, 1996, additional documentation was submitted. Specifically, Paul Revere received additional medical reports diagnosing plaintiff with chronic low back pain and carpal tunnel syndrome for which he first sought treatment on January 17, 1994 and September 13, 1995, respectively. Both reports indicate that plaintiff was totally disabled as to his occupation, but not totally disabled from other work. Defendants' Answer, Exhibits T, U. Paul Revere also sought further review of

---

**15.** Our review of Paul Revere's Decision is provided below.

**16.** This argument, as well as plaintiff's argument that "if the court allows the de novo standard of review the 'District Court may consider evidence outside the Administrative Record ... if the evidence is offered in support of a procedural challenge to the Administrator's decision, such as an alleged lack of due process afforded by the Administrator or alleged bias on its part,'" (no citation provided) (Brief in Support of Plaintiff's Motion to Have the Court Use the De Novo Standard of Review and Make a Final Judgment, record document no. 25, filed July 7, 2000, at 7) are rendered moot by our decision to apply the arbitrary and capricious standard of review to Paul Revere's decision.

**17.** Reports indicate that the plaintiff's sarcoidosis was present since 1984, but that occupational bronchitis was a new condition.

plaintiff's claim file by Dr. Laurence Cignoli. On May 17, 1996, Dr. Cignoli determined that documentation did not support the total preclusion of plaintiff from his occupation due to the lower back and carpal tunnel syndrome diagnoses. Defendants' Answer, Exhibit Y.

Aside from the medical evidence, there is also evidence that plaintiff could perform the job of "tool and gauge inspector" in a clean environment. Reportedly, Jodi Black, Human Resources Assistant, stated that plaintiff would not be exposed to volatile agents as a tool and gauge inspector because the job is performed in a separate, clean room. Defendants' Answer, Exhibit N. Further, current job descriptions provided to Paul Revere support that the job of tool and gauge inspector can be performed without exposure to bronchial irritants.

Job descriptions for machine operators at Textron include the following statements in regard to an employee's possible exposure to oil or other solvents: "[c]onsiderable oil splash, chips and machine noise prevail;" and "[a]verage shop working conditions with nominal amounts of dirt, noise, chips, and coolant splash [exist]." The job description for tool and gauge inspector includes no statements indicating the same, or similar, type of exposure. Defendants' Answer, Exhibit K.[18]

### V. PAUL REVERE'S DECISION

 Based on a review of the record before us, Paul Revere denied plaintiff's claim for long-term disability benefits because the evidence was insufficient to prove that plaintiff's occupational bronchitis, carpal tunnel syndrome or low back pain precluded him from work in the "reasonably related occupation" of tool and gauge inspector under the terms of the policy.[19] We hold that Paul Revere's denial of benefits to plaintiff for this reason was not arbitrary and capricious.

The policy issued by Paul Revere defines "totally disabled" or "total disability" as:

Totally disabled from any occupation or total disability from any occupation [ ], during the elimination period and for the remainder of the employee's disability:

1. because of injury or sickness the employee is completely prevented, with or without reasonable accommodation, from performing any and every duty pertaining to his own occupation, or reasonably related occupation, based upon the employee's education, training or experience; and

2. the employee is under the regular care of a doctor.[20]

Here, applying the sliding scale standard of arbitrary and capricious review articulated in *Pinto*, we find that it was not unreasonable for Paul Revere to conclude that plaintiff is not "totally disabled." Paul Revere concedes that, given plaintiff's condition, the use of a prescribed respirator could not adequately filter particles to protect him in his occupation as Excello machine operator. Hence, Paul Revere determined that no "reasonable accommodation" was available, and plaintiff is reasonably precluded from his job in that

---

**18.** The outdated job descriptions from 1956, 1963, 1967 and 1968 submitted by Bart Ecker, plaintiff's counsel in his appeal of Paul Revere's initial denial, indicate that the job of tool and gauge inspector subjects employees to minimal levels of dirt, grease and oil. Defendants' Answer, Exhibit X.

**19.** In its final denial, Paul Revere noted that not only was plaintiff not totally disabled from work in a reasonably related occupation, but also indicated its suspicion of the fact that plaintiff had "continued to work with these conditions prior to the incurred date of his claim for occupational bronchitis...." Defendants' Answer, Exhibit Z.

**20.** The policy defines "Doctor" as "a person who is licensed to practice the healing arts and who is practicing within the scope of his license." "This term covers only a licensed medical practitioner whose services are required to be covered by the law of the jurisdiction where the treatment is rendered."

capacity. However, the record adequately supports the conclusion that plaintiff could still perform the duties of a tool and gauge inspector, a position considered by Paul Revere to be a "reasonably related occupation." Because plaintiff would not be exposed to solvents or other volatile agents as a tool and gauge inspector, plaintiff does not qualify as "totally disabled" as defined by the policy. We also find that Paul Revere provided plaintiff with adequate opportunity to supplement his claim file prior to its final denial on May 24, 1996. Plaintiff's later submissions still failed to provide sufficient evidence of his preclusion from work in the reasonably related occupation of tool and gauge inspector. Thus, it was not arbitrary and capricious for Paul Revere to deny plaintiff benefits.

## VI. CONCLUSION

Based on the foregoing, we hold that the appropriate standard of review of defendants' denial of benefits under the Paul Revere policy is an arbitrary and capricious standard. Even in applying the "heightened" standard of review set forth in *Pinto* above, we do not, and cannot, find that any genuine issue of material fact exists as to whether or not Paul Revere acted arbitrarily and capriciously when it concluded that plaintiff was not totally disabled under the terms of the policy. Indeed, as noted above, we find that Paul Revere's determination was reasonable based on the record. Accordingly, pursuant to Fed.R.Civ.P. 56(c) we will grant defendants' cross-motion for summary judgment.

An order consistent with this memorandum will issue.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Plaintiff's motion for summary judgment (record document no. 24, filed July 7, 2000) is denied.

2. Defendants' motion for summary judgment (record document no. 27, filed July 24, 2000) is granted.

3. Final judgment is entered in favor of defendants The Plan Administrator of the Textron Insured Benefits Plan, Textron, Inc. and The Paul Revere Life Insurance Company, and against plaintiff.

4. The clerk is directed to close the case file.